### FANNY PORTER AND CHARLES E. PORTER *v.* BANK OF RUTLAND, NATHANIEL FULLERTON AND SAMUEL W. PORTER.

#### IN CHANCERY.

At law, as a general rule, a married woman can neither sue, nor be sued, unless in connection with her husband. But in chancery, whenever the interests of the two are conflicting, the wife is allowed to bring a suit against her husband, and the husband against the wife, as if they were sole and unmarried.

The husband is competent to act as trustee of his wife's separate property as well as any other person, if duly appointed; and he will sometimes be regarded as such, with a view to the protection of the wife's separate property against his creditors, without any appointment whatever.

By our law an express trust, except in lands, may be created without writing. No prescribed form of words is necessary, to create it. The intention of the party making it affords the only sure test of its creation; and, in ascertaining this intention, the language is not to be tortured by any technical constructions, but, as in the case of wills and devises, a liberal construction is to be adopted.

In designating a trustee to take charge of the fund, no greater certainty, or formality, is requisite, than in the creation of the fund itself; and, indeed, it is not necessary, in order to sustain a trust in equity, that a trustee should have been designated in the instrument creating the trust fund, or by any simultaneous or subsequent instrument.

Where it appeared, that the father of a married woman intimated to her and her husband, in conversation, that he was about to make her an advance in money, which he wished to have invested for the benefit of herself and her children, and he subsequently enclosed, in a letter to her husband, a

Porter et al. *v.* Bank of Rutland et al.

check for $1000, payable to his daughter, or bearer, and expressed in the letter a wish that the money might be so invested as would be for the mutual benefit of his daughter and her heirs, leaving the mode to be determined by her and her husband, on consultation between them, and it appeared that she then had three children, the court considered the evidence sufficient to justify them in finding, that the intention of the father was, to set apart this fund for the exclusive benefit of his daughter and her children, and to place it under the control of her husband, as her trustee.

And when the wife, in such case, brought a bill to compel the appropriation to her benefit of certain bank stock, which she claimed was purchased with such trust funds, but which had always stood in the name of her husband, and the husband was made defendant in the bill, it was held, that his answer, admitting that the property was purchased by him with the trust funds, was, so far, evidence in favor of the wife against the other defendants, who had attached the property and claimed to hold it as creditors of the husband.

But the answer of the husband, in such case, is not evidence against his co-defendants, to charge them with notice of the trust.

Property, purchased by a trustee with the trust funds, and held by him in his own name, is not subject to attachment and sale by his creditors, unless they are *bona fide* creditors without notice of the trust.

*Quære,* Whether notice of the trust, received by the attaching creditors subsequent to the attachment, but before levy, should affect their rights acquired by the attachment, if they had no notice of the trust at the time the attachment was made?

Notice to the president of a banking corporation, that stock, standing upon the books of the bank in the name of one person, is held by him in trust for another, should be considered as notice to the corporation. And it is not necessary, in order to affect the corporation with notice of such trust, that there should have been a full communication of all the circumstances connected with it. It is enough, in such case, if the party be put upon inquiry.

Depositions of stockholders in a banking corporation are inadmissible as evidence in favor of the corporation.

Although the general rule is, that an answer, responsive to the bill, is evidence of the facts therein asserted, and cannot be overcome by the testimony of one witness, yet, when the orator seeks to charge a banking corporation with notice of a trust, and the corporation answers by one of its officers, fully denying such notice, and the orator introduces the deposition

Porter et al. *v.* Bank of Rutland et al.

of another officer of the corporation, showing such notice to him, some modification of the general rule would seem to be required, inasmuch as notice given to one officer may not have been communicated to another officer, and therefore the answer and testimony would not necessarily conflict with each other.

Where it appeared, that certain stock in a banking corporation was purchased with trust funds belonging to a married woman, but stood upon the books of the bank in the name of her husband, and that the corporation, holding a promissory note against the husband, upon which a third person was liable as indorser, had commenced a suit upon the note and attached the bank stock as the property of the husband, and therefore a bill was brought by the wife, to enforce the execution of the trust, making the indorser of the note, the corporation and her husband defendants, and averring, that the indorser had paid, or deposited, the amount due upon the note, and that the corporation had commenced the suit and made the attachment upon the note by the direction and for the sole benefit of the indorser, and charging the indorser with notice of the trust, but omitting to charge the corporation with such notice, it was held, that the indorser could not thus be treated as the sole person in interest, and that, for the purposes sought by the bill, it was doubtful whether he need to have been made a defendant, and that, at all events, notice to him of the trust not having been proved, he must be dismissed, with his costs ; and that, notice of the trust to the corporation not having been averred in the bill, the corporation must also be dismissed from the suit, notwithstanding the fact of such notice was denied in the answer of the corporation, as though it had been averred in the bill, and the answer was traversed, and the court, from the testimony, found that the corporation had in fact received such notice.

But it was also held, that, inasmuch as the result arrived at by the court, so far as respected the controversy between the orator and the corporation, was not necessarily conclusive of the rights of the former, it would be competent for the chancellor, upon such terms and conditions as he might think just and equitable, to allow an amendment to the bill, or perhaps a supplemental bill to be filed, presenting the matter of notice of the trust to the corporation.

APPEAL from the court of chancery. The bill set forth, that on the 26th day of May, 1824, Mark Richards, the father of the oratrix, Fanny Porter, made a donation of $1000,00 to the said Fanny and her three children, and delivered the same to the defendant Samuel W. Porter, then and still the husband of said Fanny, with a writing directing him to hold the same in trust for the said Fanny and her heirs ; that the said sum remained in the hands of Samuel W. Por-

ter until January, 1825, when, by the advice and concurrence of said Fanny and said Richards, he invested $700,00 of the money in the capital stock of the Bank of Rutland,—taking a certificate of the stock in his own name, but still holding it in trust; that the stock stood in his name until August 12, 1840, when, at the request of the said Fanny, he transferred the stock, upon the books of the said bank, to the orator Charles E. Porter, in trust for her and her children; that on the 13th day of December, 1838, Samuel W. Porter and one Lovell executed their joint note for $3000,00, payable to the order of said Porter in ninety days, and said Porter afterwards, by his indorsement, ordered the same paid to the order of the defendant Nathaniel Fullerton, and said Fullerton, by his indorsement, duly made, transferred the same to the Bank of Rutland,—by whom the note was then discounted; that subsequently the note was paid to the bank by Fullerton, or the amount due upon it was deposited by him with the bank, for the purpose of paying or securing the same; that on the 13th day of May, 1840, a suit was commenced upon said note in the name of the Bank of Rutland, and the bank stock above mentioned was attached thereon as the property of Samuel W. Porter; that this suit was commenced by the procurement and request of said Fullerton, and the attachment was made by his direction and for his sole benefit; and that the said Fullerton well knew, at the time, that the said bank stock, so attached, was purchased by Samuel W. Porter with the trust funds of said Fanny, and that he held said bank stock in trust for her and her heirs. And the orators prayed, that the transfer of the stock to Charles E. Porter, in trust as above mentioned, be established, and that the Bank of Rutland be ordered to pay to him the dividends accruing thereon, and that Fullerton be enjoined from levying on said stock any execution which he might obtain in the action upon the note above mentioned, and that Samuel W. Porter might be called to an account for the residue of the trust fund; and there was also a prayer for general relief.

The Bank of Rutland answered, by their cashier, William Page, denying all knowledge of any donation having been made by Mark Richards of $1000, or of any other sum, for the benefit of the said Fanny Porter, and all knowledge that the same, or any part thereof, was invested in the capital stock of the bank for the benefit of said

Fanny, except from the orators' bill and from declarations made by Samuel W. Porter after he became indebted to the bank, and after the attachment had been made, mentioned in the bill. These defendants admitted the commencement of the suit in their name upon the note, and the attachment of the bank stock, and the transfer of the same to Charles E. Porter, as mentioned in the bill; not stating, however, that Fullerton had any connection with that suit.

The defendant Fullerton answered, denying all knowledge, that any donation had been made by Richards to Fanny Porter, or that the bank stock in question was held by Samuel W. Porter in trust for her and her heirs; this defendant admitted the commencement of the suit upon the note in the name of the Bank of Rutland, and the attachment of the bank shares thereon, and that the suit was still pending, and that he had requested it might not be discontinued and had agreed to pay the expenses of its prosecution, and that he had deposited in the bank a sum equal to the amount due upon the note, as security for the same; but he denied, that the suit was commenced at his request, or that he had knowledge of it, until after it had been commenced and after the bank stock had been attached; and he averred, that the note was not discounted for his benefit, but that he indorsed it as surety, merely.

The defendant Samuel W. Porter answered, admitting that he received of Mark Richards the sum of $1000, in trust for his wife, Fanny Porter, and her heirs, and that the fourteen shares in the capital stock of the Bank of Rutland were purchased with a portion of that money, and that he held these shares in trust for his wife and her children, as alleged in the bill; and he averred, that he informed Fullerton and George T. Hodges, the president of the bank, before the shares were attached, that he so held them in trust. This defendant also admitted, that he had received the dividends upon those shares, but alleged that he had become insolvent, and unable to repay the same.

The answers were traversed, and testimony was taken.

Mark Richards, the father of Fanny Porter, testified, on the part of the orators, that in the year 1824 he advanced $1000,00 to Samuel W. Porter, by way of a check on the Bank of Brattleboro'; that he had previously informed the said Fanny and her husband, that he should make such an advancement, and wished to have it invest-

Porter et al. *v.* Bank of Rutland et al.

ed in some institution for the benefit of said Fanny and her children; that when he sent the check he enclosed it in a letter to Samuel W. Porter, containing this clause ;—"I also enclose a check on B'o Bank for $1000, for Fanny ; perhaps it would be well to invest it where it can be secured on real estate to a larger value, so as to insure the annual payment of interest, and the principal sum, when payment becomes necessary, (or desirable.) I leave that to your and her pleasure, what mode to adopt for her and heirs mutual benefit ";—and that sometime afterwards, upon inquiry made by him whether the money had been invested, Samuel W. Porter informed him, that he had invested $700, or $800, of the money in stock in the Bank of Rutland,—to which the witness made no objections. It appeared from the testimony of the cashier of the Bank of Brattleboro', also taken on the part of the orators, that the check, mentioned in Richard's testimony, was made payable to Fanny Porter, or bearer.

Other witnesses were examined ; the substance of whose testimony is sufficiently detailed in the opinion of the court.

The court of chancery, September Adjourned Term, 1845,— HEBARD, Ch.,—dismissed the bill ; from which decree the orator appealed.

*E. Hutchinson* for orator.

The well established rule, that, whenever trust money can be traced, a court of equity will fasten a trust upon the property purchased with the money, in favor of the persons beneficially interested, has lately received the sanction of this court. *Blaisdell* v. *Stevens,* 16 Vt. 187. The wife may hold real or personal property independent of her husband, without its being subject to attachment at the suit of his creditors ;—and of personal property the husband may, for that purpose, be the trustee for the wife. *Pinney* v. *Fellows,* 15 Vt. 525. 2 Kent 162. That the bank stock in question was purchased with the money furnished by Mr. Richards is sufficiently established by the testimony, without resorting, for proof of the fact, to the answer of Samuel W. Porter. That Mr. Richards, the donor, intended the money should be kept from the immediate possession of the oratrix, in trust for the future benefit of herself and children,

not subject to the disposal of the husband, is apparent from the testimony of Mr. Richards, and his letter accompanying the gift.

But, although the general rule is different, in this case the answer of Samuel W. Porter is evidence, as well against himself, as against the other defendants, whose only claim to the stock in question is through and under him. 1 Greenl. Ev. 217, § 178. *Osborn v. Bank of United States*, 9 Wheat. 738, [5 U. S. Cond. R. 741.] *Field v. Holland*, 6 Cranch 8, [2 U. S. Cond. R. 285.] *Van Riensdeick v. Kane*, 1 Gal. 635. *Denton v. Perry*, 5 Vt. 382. In equity the wife may sue her husband. In the present case he was a proper and necessary party defendant. Being such, she may use his answer to the same extent, as if he were not her husband. Story's Eq. Pl. §§ 61–63. 2 Fonbl. Eq. 450, n. (c.) Ib. 456, n. (f.)

The defendants acquired no title by the attachment, the stock attached being trust property. Besides, the defendants all stand charged with notice of the trust; and whether given before or since the attachment is unimportant. Notice since the attachment is admitted; and if given either before conveyance, or before payment of purchase money, it is sufficient. Here there has not yet been either conveyance, or payment. 2 Fonbl. Eq. 148, in note. *Pinney v. Fellows*, 15 Vt. 542.

*L. Adams* and *O. P. Chandler* for defendants.

1. A separate personal property cannot be given to a *feme covert*, without the intervention of trustees, even if it be so expressly declared. *Harvey v. Harvey*, 1 P. Wms. 125. *Burton v. Pierpoint*, 2 P. Wms. 79. *Tyler v. Lake*, 4 Sim. 144. 1 Chit. Pr. 61. *Purdew v. Jackson*, 1 Russ. 1–72.

2. In this case it is not so declared. 1 D. Ch. 322.

3. Porter cannot be a witness for his wife; Greenl. Ev. 411; *Anstey v. Dowsing*, 2 Str. 1253; *Windham v. Chetwynd*, 1 Burr. 414; *Davis v. Dinwoody*, 4 T. R. 678; 8 Paige 47; and without his testimony, there is no evidence, that the Rutland bank stock was bought or paid for with the $1000.

4. The testimony does not show, that a trust was intended.

5. The shares were subject to attachment. 1 Am. Chanc. Dig. 364, § 33; 522, § 15; 540, § 39; 554, § 6. 2 Story's Eq. 608–610. Gresley's Eq. Ev. 245.

The case having been retained for advisement, the opinion of the court was delivered, at the March Term, 1848, by

DAVIS, J. This case involves questions of no little importance. At law, as a general rule, a married woman can neither sue nor be sued, unless in connection with her husband. Exceptions, arising chiefly from the impracticability of associating the husband in certain cases, exist in this as in most general rules. As applicable to husband and wife having adverse interests, there is no exception, unless, indeed, the proceeding seeking a dissolution of the marriage and a consequent arrangement and distribution of the property belonging to them, or one of them, be deemed such. Although she may have, before marriage, or may acquire, afterwards, separate estate, real, or personal, of which she may be despoiled by her husband, she cannot, either alone, or by the intervention of a next friend, prosecute a suit for the recovery of it. This results, not from a unity of estate, for the common law recognizes her separate property, but from a unity of persons.

Chancery, however, proceeds upon different principles; whether upon wiser principles, or not, it is too late to inquire. In that court, in suits affecting the peculiar estate of the wife, whether as plaintiff, or defendant, in respect to all the world besides her husband, there is no absolute necessity of his being made a party,—although often in practice, in conformity to the mode of proceeding at law, the husband has been associated with the wife. Recently it has been found more convenient, to say nothing of other considerations, to pretermit the husband, in cases in which his interests are not concerned. But chancery has permitted a still farther departure from the principles of the common law. Whenever there exists an antagonism of interest between the two, it allows the wife to bring a suit against her husband, and, *e converso*, the latter against the former, as if they were sole and unmarried. It is merely necessary to introduce the slight machinery of a next friend; and in some cases the court will, by interlocutory order, compel the husband to defray the expenses of the suit on both side, while the right is in suspense.

It is not doubted, but that, in the present instance, Samuel W. Porter, the husband, was very properly made a defendant to the bill. If the fourteen shares in Rutland bank can be regarded as a trust fund, of which the oratrix is the *cestui que trust*, there was, previ-

53

ous to the transfer in August, 1840, no known and recognized trustee, unless the husband can be regarded as such. He is competent to act as such, as well as any other person, if duly appointed; and even he will be sometimes regarded as such, with a view to the protection of the wife's separate property against his creditors, without any appointment whatever. 2 Kent 162-3.

As between the oratrix and her husband, however, it seems not to be regarded as a matter of any importance, what the rights of the former may be; as the latter declares himself to be insolvent, and possessed of no means of his own to pay whatever may be found due from him. The oratrix, though she has traversed the answer, offers no evidence to controvert this fact. To take an account, therefore, supposing her to be entitled to it, would be a useless proceeding, except so far as it should affect the bank shares. To this, third persons, creditors of S. W. Porter, interpose a claim; and the real controversy here is, whether they or the oratrix have the better claim in equity. In this aspect of the case, it is natural to suppose, that the sympathies of the husband are altogether with the wife; and nothing has transpired, while it has been in progress before us, to induce a different conclusion.

The bank of Rutland and Nathaniel Fullerton are the only parties, then, whose interests come in collision with those of the oratrix. They resist her pretensions mainly on two grounds;—1st, Because they say these bank shares were not trust funds in point of fact, but were truly, as confessedly they were in form, held by Porter in his own right; 2d, That if, as between them, the shares are to be regarded as trust property, yet that the trust was a secret one, not apparent in the original certificate of subscriptions or by any transfer, or other evidence, on the books of the bank, until after the attachment at the suit of the bank; and that they, the defendants, neither knew in fact, nor were so situated that the means of knowledge were within their reach, that it was trust property.

The check on the bank for $1000, dated January 15, 1824, is in favor of " Fanny Porter, or bearer;" and the letter to Mr. Porter, enclosing it, dated May 26, 1824, says, " I enclose a check on B'o bank for $1000 for Fanny,"—adding " perhaps it would be well to invest it where it can be secured on real estate to a larger value, so as to ensure the annual payment of interest and the principal sum

when payment becomes necessary, or desirable. I leave that to your and her pleasure, what mode to adopt for her and heirs mutual benefit. Mark Richards." These two papers, as quoted, comprise the whole of the written evidence of the original creation or declaration of a trust. There is, however, additional evidence of a parol declaration on the part of the donor, made to his daughter and her husband previous to drawing the check, which throws farther light upon his intentions. This is contained in his deposition; in which he says, that, before the delivery of the check, he had conversation with both of them, and informed them of his intention to make an advancement of that amount, and that he wished to have it invested in some institution for the benefit of his daughter and her children; that after the books were open for subscriptions for Rutland bank stock, he inquired of Porter if he had invested the money in stock of that bank, and was told he had done so, to the amount of $700, but could not procure stock to the whole amount; and that the deponent made no objection to such investment. The defendants' counsel insist, that neither from the letter, nor the prior verbal intentions, nor from both combined, can be fairly extracted any creation of a trust in favor of the daughter, or her children, or any designation of a trustee. The plaintiffs' counsel, on the contrary, contend there is ample evidence of both.

By our law an express trust, except in lands, may be created without writing. In respect to personal property it is not a matter of any importance, whether it be by a written instrument, or by parol, or partly in one mode and partly in the other. Trusts, too, may be implied, or may result from certain facts and circumstances requiring their existence for purposes of equity. No prescribed form of words is necessary, to create an express trust. The intention of the party making it affords the only sure test of its creation. In ascertaining this intention we do not torture the language used by any technical constructions, but, as in the case of wills and devises, adopt a liberal construction, and endeavor, in the language of Judge Story, to draw *ex visceribus verborum* the true sense. 2 Story's Eq. 243–5; *Fisher* v. *Fields,* 10 Johns. 494; 2 Blackford 198; *Wright* v. *Atkyns,* 1 Turn. & Russ. 157; *Smith* v. *Attersoll,* 1 Russ. 266; *Taylor* v. *Moyrout,* 4 Dessaus. 505; 1 McCord's Ch. R. 119. *Letcher* v. *Letcher's Heirs,* 4 J. J. Marsh 593; *Chamber-*

*lain* v. *Thompson,* 10 Conn. 243 ; 16 Pick. 327, where the authorities from the old English Chancery Reports are collected and ably commented upon by Judge Wilde.

In designating a trustee to take charge of the fund, no greater certainty, or formality, is requisite, than in the creation of the fund itself. The same liberal constructions and the same implications exist here, as upon the other point. But chancery authorities fully warrant us in saying, that, in order to sustain and uphold a trust in equity, it is not indispensably necessary, that a trustee should have been designated in the instrument creating the trust fund, or, indeed, by any simultaneous or subsequent instrument. If no person is appointed, chancery will not suffer the beneficial objects of the trust to fail of being carried into effect for that cause, but will, on application from those in interest, provide all necessary machinery for that purpose ; as in *Wallingsford* v. *Allen,* 10 Pet. R. 583, where, on a separation between husband and wife, the former conveyed to the latter, on certain consideration, arising from a pending suit for alimony, a female slave; it was insisted by counsel, among other objections to the conveyance, that no trustee was interposed between husband and wife. The objection was overruled ; WAYNE, J., argues the point at some length, and cites a number of authorities in support of the position established.

Upon full consideration of the language used by Mr. Richards, both verbal and written, in connection with the attending circumstances,—his daughter Fanny then having three children,—I cannot doubt but it was the intention of the father to set apart this fund for the exclusive benefit of Mrs. Porter and her children, or heirs, and that he intended to place it under the control of her husband, as her trustee. This intention, it is true, is not indicated with all the precision that we should look for in an instrument prepared under the eye of legal advisers. His intention cannot, nevertheless, be well mistaken. He then believed his son-in-law to be in good circumstances, and no doubt reposed full confidence in his discretion and judgment in managing the property so as to effect the object he had in view. He was willing to trust to him to select the proper mode of investing it, where it would be safe, and also yield an annual interest.

A portion, whether the $300 remaining, or not, does not appear,

it seems by Porter's answer was laid out in land.  It would seem probable from Mr. Chase's deposition, which speaks of her owning one house in company with some other person and also the house in which the family then lived, of considerable value, that the generosity of her father was not limited to a gift of $1000.  One or both of these were purchased by her father; and although we are ignorent of the time, or times, when this was done, still, the course pursued here affords some explanation of the general views of Mr. Richards, in making advances to her.  Had he merely intended to make a donation to his son-in-law, to be disposed of at his pleasure, and to go into the general mass of his property, although it would not be unnatural to expect a paternal proffer of advice as to the best mode of keeping it intact for the common benefit of the family, yet we should not expect to find directions so to dispose of it, that she and her heirs should reap the benefit of it.  It seems to me, that these directions are not susceptible of any other explanation, than that he had in view a distinct appropriation of the gift for her and their exclusive benefit.

But is there any evidence, that the bank shares, attached by the defendants, were purchased and paid for out of this trust money?  The only direct evidence to that effect is contained in Porter's separate answer; where the fact is directly asserted.  The defendants counsel urge, that his answer cannot be used to prejudice the rights of the other defendants.  The general rule is as assumed by them; but as the fact asserted is one with which they have no necessary connection, none, except that resulting from their situation as attaching creditors of Porter, and deriving all their rights to the property from and under him in that character, I am inclined to think he is a competent witness, at the call of the orator, by way of answer, to prove the general fact, that the shares were trust property, not only as it may affect himself; but as it may affect the other defendants.

There is some indirect circumstantial evidence, bearing on this point; such as the communication made to Richards by Porter, that he had invested a portion of the money in bank stock, which communication could not have been made with any reference to the defendants; the general understanding and conversation in Porter's family,—when no motive can be supposed to have existed to have

produced a false impression,—as stated in the depositions of Jonathan Chase, Frederick A. Porter, Hannah Porter and Samuel Hemmenway; which, taken together, produces a very satisfactory conviction on the mind, that Mrs. Porter had the beneficial interest in these shares, and that he so regarded it, notwithstanding the fact, that, during all that time, they stood on the bank books in his own name.

The loan of $300 to the last named witness, within a week after Porter received the cash on the check, and taking a note therefor payable to Mark Richards, tends strongly to show, that Porter, at the time, did not regard the money as his own. The fact, that, during the same year, he subscribed for stock and took transfers from others in his own name, which he paid for out of this money, may be regarded as having an opposite tendency. Perhaps the inconvenience of executing the necessary papers on the successive payments of assessments and of ·dividends in the name of his wife may afford a satisfactory explanation of this circumstance.

These shares being thus trust funds, held by Porter in his own name, but the beneficial use of which belonged to his wife, they were not subject to attachment and sale by his creditors; unless, indeed, they were *bona fide* creditors, without notice of the trust. Were the Bank of Rutland and Nathaniel Fullerton, at the time of the attachment, in this predicament?

When I say *at the time of attachment*, I do not forget, that the plaintiffs' counsel contend, that the inquiry is not to be restricted to that point of time,—that, though they may not then have had notice, still, if subsequently, before sale on execution, notice were brought home to them, the effect would be the same. In other words, the fact of purchase is to be referred to the final sale, rather than the establishment of the lien by attachment.

Whatever plausibility there may be, at first sight, in this position, there seems to me to be strong reasons for questioning its soundness. In a controversy between a purchaser by attachment and levy and one in any other mode, there can be no doubt, that the question of priority of right is to be determined by the time of attachment and notice, provided they are followed by the proper proceedings, after judgment, to perfect the title. Here, however, there is no such controversy. These bank shares were really held in trust at the

time of the attachment, though the trust was not apparent; they remained in the same condition at the time of bringing this bill, except that a conveyance had in the mean time been made by S. W. Porter, the trustee, to Charles E. Porter, expressly in trust for Fanny Porter. This was simply a proceeding in furtherance of the trust, rendered necessary, perhaps, for the purpose of bringing this suit, and at all events expedient for purposes of notice generally thereafter. Being subsequent to the attachment, it could create no new rights, militating against those thus acquired.

Supposing, then, the bank to have had no notice at the time of their attachment, but to have subsequently received ample notice, would they thereby be deprived of the right of proceeding, as if no such notice had been received ? If so, no little hardship might result, in consequence of the accumulation of costs, the omission to avail themselves of other means of satisfying their demands, relying on the security supposed to be obtained, and perhaps intervening insolvency of their debtor. This point is suggested, by way of *quære*, by BENNETT, J., in the case of *Pinney* v. *Fellows*, 15 Vt. 542. It was not necessary then, nor is it here, to come to any definite conclusion upon it. Individually, I incline to the opinion, that notice thus carried home to a creditor, subsequently to the attachment, would have no effect in defeating his rights under it ; yet as in the present case we have come to the conclusion, that the bank had in fact notice of the true character of these funds, at the time of their attachment, it becomes of no importance, whether this opinion be well or ill founded.

The question, then, recurs, whether the defendants, on the 13th of May, 1840, when they made their attachment, had either actual or constructive knowledge, that the shares standing in Porter's name were held in trust for Mrs. Porter.

The bill directly charges such knowledge in Fullerton, and represents him as the real person in interest, although the attachment was made in a suit by the bank, on a note executed by Porter, made payable to his own order, indorsed by himself and Fullerton, and discounted by the bank ; yet it is somewhat remarkable, that it no where charges notice to the bank, or its officers, of the character of the funds. Whether this was the result of oversight, or arose from the supposition that Fullerton had paid the note, as indorser, and

procured the suit to be commenced in the name of the bank, but solely for his own benefit, I am unable to say. If the latter, I apprehend, however the fact might be, the orators proceeded entirely upon erroneous principles.

If a suit could be sustained at all in the name of the bank, on the ground of a legal right in the corporation, it is very clear, it must proceed and be governed by the same rules and principles, as if there were no third person, having an equitable interest in the subject matter. Notice to them was at least as necessary as to Fullerton; and perhaps more so; for it is not very apparent, that, for the purposes sought by the bill, there was any necessity of making him a defendant. He was not a party to any proceeding, which sought to appropriate these funds in payment of Porter's debts. He was a creditor, indeed, or would become so, on payment of the note, and would then, like any other creditor of his, be entitled to proceed against him for satisfaction. The injunction sought for against taking out execution and levying on the shares need not, at any rate, even if it could, have extended to any other person than the plaintiffs in the suit.

But the bank, by their cashier, William Page, as if regularly called upon by the bill, answer distinctly, that they had no knowledge of the gift, by Richards to Fanny Porter, of $1000, or any sum, or of the investment thereof in the stock of the bank, previous to the attachment, and none since, except from the orators' bill and the declarations at different times of S. W. Porter. If it was necessary for the corporation at all to answer upon this point, it cannot be questioned, but that the answer must be received as evidence. It is responsive to the bill, assuming the bill to have averred notice. Conclusive, of course, it is not. The only evidence there is to contradict this answer, aside of S. W. Porter's answer, of which I will speak presently, is contained in the deposition of George T. Hodges; who states that Porter, about the time Morris & Nesmith failed, in a conversation in which he proposed to sell the stock standing in his name, remarked, that it belonged to his wife. He adds, that, at the time, he was president of the bank. We have no means of ascertaining when this was, except by referring to the answer of Porter, in which he says Morris & Nesmith failed May 17, 1839. This was before the attachment. Luther Daniels' deposition tends also

Porter et al. *v.* Bank of Rutland et al.

to establish the date of the conversation, alluded to by Mr. Hodges, as being before the attachment. He was an incompetent witness for the bank, being a director and stockholder; but his testimony was adverse to the party that called him, and therefore admissible on that point. Supposing it to be allowable, as I think it is, to ascertain a date, thus incidentally mentioned, by one defendant, whose statements are not in all points to be received against the others, there is, then, the testimony of one witness in opposition to the answer.

Doubts were suggested in argument, whether notice to the president should be considered as notice to the corporation. I have no doubt it should be. There is no other officer, or agent, to whom it could have been made with more propriety. It would be equally available, no doubt, if made to the cashier, or a director. Nor am I disposed to detract any thing from the weight of this evidence, because there was not a full communication of all the circumstances connected with her ownership. The fact being communicated, and being true, would be sufficient. It is never required, in questions of this kind, that full and accurate details should be given, in order to constitute notice. It is enough, if the party be put upon inquiry, —apprised of the fact in general terms; and he will omit, at his peril, to seek for full information in those places, and of those persons, where it may reasonably be expected to be found. *Blaisdell* v. *Stevens et al.*, 16 Vt. 179. Sugd. on Vend. 532. 4 Johns. Ch. R. 39–44. *Anderson* v. *Van Alen*, 12 Johns. 343.

Porter, in his answer, states, that he gave repeated notice to Fullerton, before the attachment, of the character of the funds, and also, that he gave a similar notice to Mr. Hodges, the president, before June 25, 1839; but I lay this testimony out of the case,—being fully satisfied, that, on a question of this kind, his statements, by way of answer, cannot be received to prejudice either the bank, or Fullerton.

This state of the evidence would seem to leave the point in issue, if it could be regarded as in issue, in no little doubt and uncertainty. Upon ordinary principles, something more than the testimony of one witness must be adduced, to overthrow an answer in a point directly responsive. Nothing more than that exists in the present case. I lay out of the case the deposition of Mr. Page, as I have done

54

that of Porter, so far as the Rutland bank is concerned, because, being a stockholder, he is incompetent as a witness for them. As respects Mr. Fullerton, there is no impediment to his testimony.

Perhaps the circumstance, that the answer of the bank is put in by its cashier, as it must necessarily be by some officer, or agent, who swears to matters appearing, or not appearing, upon the bank books and papers, and to such as are within his personal knowledge, but who would not necessarily be cognizant of verbal communications, made to another officer, might require some modification of the principle above alluded to, concerning the weight of evidence. It seems to me, that it should ; for the answer put in by the cashier is not necessarily in conflict with the testimony of Mr. Hodges. It is only necessary to suppose, that the latter had not informed the former of the verbal communication made to him, to see that there is no antagonism between the two. These considerations, on the whole, incline us to come to the conclusion, that the bank had such notice, as would forbid their attaching the shares as the property of Porter.

But, as already stated, I am unable to surmount the difficulty, that the bill contains no allegation of notice, as respects the bank ; and though the answer volunteers to say there was none, which answer is traversed by the orators, yet it would require us to overleap principles of chancery practice everywhere recognized, and in their nature most safe and salutary, to regard these circumstances as forming an issue upon that essential point.

As respects Fullerton the case is far less complicated. Notice to him is distinctly charged in the bill, and he as distinctly denies it in his answer. The orators have no admissible evidence to overcome the answer. Porter's answer, as already shown, cannot be received as competent for that purpose. If it should be contended, that, owing to his liability on the note, the deposit of money sufficient to discharge his liability, and the fact, if it be a fact, that he requested the suit to be brought and the shares attached, he is to be affected with notice given to the bank, as his agent, yet the orators could not prevail ; because the testimony of Mr. Page, which was inadmissible in favor of the bank, encounters no objection, when brought to bear in favor of Mr. Fullerton. His evidence comes strongly in aid of the answer. Allowing the testimony of Mr. Hod-

ges to come in aid of the bill, in this aspect, there can be no room for doubt, as to which way the evidence preponderates.

The result is, as to Nathaniel Fullerton, the orator's bill must be dismissed, with costs, including the costs of this court; and, if the orators consent to that course, the bill will also be dismissed, without costs, as to Samuel W. Porter.

As it will be perceived, that the result arrived at, so far as respects the controversy between the orators and the Rutland bank, is not necessarily conclusive of the rights of the former, it will be competent for the chancellor to allow an amendment to the bill, or perhaps a supplemental bill to be filed, presenting the matter of notice, on such terms and conditions as he may think just and equitable.

As respects the Rutland bank, the decree of the chancellor is reversed *pro forma,* and the case is remanded to the chancellor for further proceedings.