## DAVID T. CHADWICK v. GEORGE W. CHADWICK.

*Trusts, how created—Sufficiency of bill to enforce—Lapse of time—Necessary parties—Decree—Deposition, practice in taking—Motion to suppress.*

1. A trust may frequently be inferred from the facts and circumstances of a particular case, and its creation does not depend upon the use of a particular form of words.

2. A bill to enforce an alleged trust, averred the delivery of all of complainant's personal property to a son under an arrangement for its investment in business by the son, for their mutual advantage, and that the father was to become a member of the son's family, which conditions were complied with, but for two years prior to filing the bill the father had been treated as a menial, the son refusing to pro-

vide him with the necessaries of life, and that he feared he would be turned into the street, unless granted relief by the court. That the son was worth $19,000 in real and personal property and denied that he held any of the same in trust for the father.

*Held*, that the facts stated, though not as specific as good pleading required, were sufficient to support complainant's case.

3. The lapse of time which will render a claim in equity to enforce a trust, stale, cannot begin until after a breach of the trust occurs.

4. The sister of defendant was not a necessary party to the suit, she having no interest in her father's property until after his death.

5. Where complainant does not appeal the appellate court cannot increase the amount of the decree granted, and will not review the data and computations adopted and made by the circuit judge, when it appears as in this case, that the amount of the decree is not excessive.

6. The failure of a commissioner to subscribe each sheet of a deposition, inclose the commission, interrogatories and depositions in a packet, bind it with red tape and set his seal at the several meetings or crossings of the tape, as required by Chancery Rule 52, is a mere irregularity, and in the absence of any suspicion that the deposition has been tampered with, or other wrong indulged in by the commissioner or parties, will not affect the decree.

7. Defendant's motion to suppress a deposition was properly denied, the record failing to show due notice of said motion. Chancery Rule 54.

Appeal from Kent. (Montgomery, J.) Argued November 19, 1885. Decided January 13, 1886.

Complainant filed bill to enforce an alleged trust and a decree was granted in his favor, from which defendant appeals. The facts are stated in the opinion. Affirmed.

*Birney Hoyt* and *Benj. F. Sliter*, for complainant:

The bill is properly filed and should be sustained as a bill for an accounting. Parties who do business together, or occupy a fiduciary relation and ought to keep accounts, can be compelled to account in equity whether partners or not: *Cochrane v. Adams*, 50 Mich. 16 ; *Clarke v. Pierce*, 52 Mich. 157; *Richardson v. Welch*, 47 Mich. 309; *Grant v. Merchants' & Mnfrs' Bank*, 35 Mich. 515; 1 Story Eq. Jur. 441-2-3 ; 463-4.

A trust in personalty may be established by parol: *Crissman v. Crissman*, 23 Mich. 217; and a declaration of trust needs no particular words: *Ellis v. Secor*, 31 Mich. 186,

and cases cited on pages 190–1–2–3. Trusts exist in personalty where the specific property changes every day: *Leland v. Collver*, 34 Mich. 418. The court of equity does not require full and express agreements to create a trust, but will hold a party to be a trustee where there is no express agreement if it is equitable: *Miller v. Aldrich*, 31 Mich. 408; *Cromwell v. Brooklyn Ins. Co.*, 44 N. Y. 42.

A strict observance of Chancery Rule 54 is not required where there is no suspicion that the deposition was tampered with: *Van Sickle v. Gibson*, 40 Mich. 172; *Locke v. Tuttle*, 41 Mich. 408; *Cook v. Bell*, 18 Mich. 392. The statute of limitations does not apply to an express trust: 3 John. Ch. 216, 388; 7 John. Ch. 110; and in case of an accounting it runs only from the last item which, in this case, was a few days before suit was begun: How. Stat. § 8717. Where the arrangement between the parties shows that a trust was intended, it will be so construed: *Day v. Roth*, 18 N. Y. 448; *Porter v. Bank of Rutland*, 19 Vt. 410.

*John E. More*, for defendant:

Trusts in personal property may be created by parol, but they must be established by the most positive and satisfactory evidence and their terms and conditions fully and definitely determined: Perry on Trusts, 3d ed., § 86; Story Eq. Jur. § 979; Pomeroy's Eq. Jur. Vol. 2, § 1009 and cases cited: *Crissman v. Crissman*, 23 Mich. 217; *Russell v. Switzer*, 63 Ga. 711; *Tritt v. Crotzer*, 13 Pa. St. 455; *Silvey v. Hodgdon*, 52 Cal. 363; *Monroe v. Graves*, 23 Ia. 597; *Trout v. Trout*, 44 Ia. 471: *Lantry v. Lantry*, 51 Ill. 466. Adaline E. West, a sister of defendant, should have been made a party to this suit: Story Eq. Pleadings, § 72; *Westcott v. Minn. Mining Co.*, 23 Mich. 152; and a court of equity will not decide a cause until the necessary parties are brought in: Story Eq. Jur. § 1526; and the rule is well established that in suits brought concerning trust property, all of the trustees and *cestuis que trust* are necessary parties: Story Eq. Pleadings, § 207; Perry Trusts, 3d ed., § 881; *Fish v. Howland*, 1 Paige, 20; *Mann v. Mann*, 1 John. Ch. 238.

SHERWOOD, J. The bill in this case was filed to enforce an alleged trust. It sets forth that prior to December, 1865, the complainant and his son and daughters (they being his

only children) resided in Allegany county, New York; that he was then a widower, and has ever since remained single; that before that time he was the owner of real estate and personal property worth $7,000, and by the laws of New York had a life-interest in a house and lot worth $800, left by his deceased wife; that during the years 1865 and 1866 all of his property was converted into money by complainant, defendant advising and assisting in the sales; that the proceeds of said sales amounted to about $7,000, and this sum was intrusted by complainant to defendant, in whom he had great confidence; that at the same time complainant delivered into the custody of defendant household furniture of the value of $800.    The bill then states:

"That it was then and there arranged and understood between your orator and his son, the said George W. Chadwick, that the said George W. Chadwick was to take said moneys, and invest the same in some kind of business,— the boot and shoe business being especially mentioned—said investment to be for the mutual benefit and advantage of your orator and the said George W. Chadwick; that your orator was to live with and be a member of the family of the said George W. Chadwick."

Complainant then alleges that, in pursuance of this arrangement, defendant came to Grand Rapids, and located in business, and a few months afterwards (early in 1866) complainant joined his son, and entered the latter's family, and was still a member of the family at the time the bill was signed.    The bill further states that for two years previous the treatment which complainant has received in defendant's family was intolerable; that he had been treated as a menial, and deprived of all civilities; that defendant refused to provide him with the necessaries of life; and that he feared that he would be turned into the street, a pauper, unless relieved by the court.    It further charges that defendant is worth about $19,000 in real and personal property, which he claims is his own absolutely; that he denies that he holds any property in trust for complainant.    The bill then charges that defendant does hold in trust for complainant "the property hereinbefore described as the

property of your orator, together with interest accumulations." The prayer asks for an accounting by the defendant of all the property received by him which belonged to complainant; that defendant may be decreed to pay over the sum found due complainant on such accounting; and that defendant be enjoined from disposing of any of his property pending the suit; also for general relief.

Defendant demurred to the bill on the following grounds:

" (1) The bill makes out no case for relief in a court of equity. (2) The alleged trust arrangement, set forth in the bill, is too uncertain and vague for a court of equity to enforce, or to decree the performance of as a contract. (3) That it does not appear that the defendant has ever acknowledged the alleged trust; that this trust, if it ever existed, was created more than fifteen years before the bill of complaint was filed; that complainant's cause of action, if he ever had any, arose more than twelve years prior to the commencement of this suit; and that, therefore, complainant's claim is too stale to be considered by a court of equity. (4) That it does not appear by the bill that there has ever been such a violation by defendant of the alleged trust arrangement as to entitle complainant to the relief prayed."

This demurrer was overruled, and defendant answered, denying all the material allegations of the bill. The answer alleges that what money complainant did have was lost in business and spent in litigation about 1859, after which time defendant supported complainant's family. The answer admits that complainant lived with defendant in his family, as alleged in the bill, but denies that this was in pursuance of any such arrangement as the bill sets forth, and denies that the money invested by defendant at Grand Rapids was the money of complainant.

The cause was heard on pleadings and proofs, and an interlocutory order was thereupon made, which gave the opinion of the court on the principal questions of fact and law in the cause. The court found that December 18, 1865, complainant delivered to defendant $1,986.75 of his own property, and $800 the proceeds of the sale of the house and lot left by complainant's wife, in which sum complainant

had a life-estate, in trust for the use and benefit of complainant, and one object of said trust was the support and maintenance of complainant; that, in pursuance of this arrangement, complainant lived with defendant, and was supported by him until June 1, 1881, from which time defendant ceased to support complainant; that allowing the defendant for what the complainant's board was worth more than the income from his property in defendant's hands, and adding interest since the defendant ceased to support complainant to date of decree, the court found as the sum due the complainant $2,290.38, and this amount the decree directs the defendant to pay to the complainant forthwith, with costs of the suit.

The defendant comes to this Court, and now asks to have this decree set aside and the bill of complaint dismissed. Ten errors are alleged and complained of by counsel for defendant as reasons why the decree at the circuit should be set aside and the bill dismissed.

The first is that the demurrer should have been sustained. We think the facts set up in the bill, though not as full as they might have been, nor as specific as good pleading requires, are still sufficient to support the complainant's case. The trust itself, as well as the breach, are fully stated. It requires no particular form of words to create a trust: Perry, Trusts, § 112; *Harding v. Glyn,* 1 Atk. 469; *Bernard v. Minshull,* 1 Johns. 276; *Warner v. Bates,* 98 Mass. 274; *Cummings v. Corey,* 58 Mich. 494; *Crissman v. Crissman,* 23 Mich. 217; *Ellis v. Secor,* 31 Mich. 186. It will not be unfrequently inferred from the facts and circumstances of a particular case, and I think the facts in the present case quite sufficient to warrant such inference. *Leland v. Collver,* 34 Mich. 418; *Miller v. Aldrich,* 31 Mich. 418; *Cromwell v. Brooklyn Ins. Co.,* 44 N. Y. 42; *Huxley v. Rice,* 40 Mich. 73. There can be no question but that the defendant received the property of complainant, and has held and controlled it many years. He did not own it, but used it. It was all the complainant had. He now needs it, and there is no reason in the world why the

defendant should not now account for it. The trust is of the simplest kind, and the duty he owes, under the relation he assumed when he took the property of his father, is enjoined by the most sacred obligations of life, and courts will be vigilant in such cases to see to it that filial confidence thus reposed is not violated with impunity. That the complainant was to live and have a home with the defendant is not denied. To this extent the trust is substantially admitted, and it will not do to say there has been no breach, after the father has been turned out of doors and his home has become a place of torment and disgrace to him. The complainant's claim is not a stale one. His right to complain did not lose force by lapse of time until after a breach of the trust had occurred, which the record shows to be quite recently. Adaline, the sister of defendant, had no interest in her father's property until after his death. It was not necessary to bring her before the court. The dealings involved were only those existing between the complainant and defendant.

We have already considered the question raised in the fifth ground relied upon by the defendant. We think the proofs made are sufficient to enable the court to make a proper decree in the case.

In regard to the sixth ground of defendant—that the complainant placed his money in defendant's hands under no such trust arrangement as claimed—we do not think it is sustained by the proofs. It is quite true that the complainant expected his son, the defendant, to support him; but it seems quite clear from the proofs that, in the event of the failure of the son to furnish such support, the complainant never did and never intended to place his property beyond his right to enforce an accounting if he desired one, and the possession thereof for his own support.

The seventh ground for reversal claims the decree is too large. We think not. The testimony, in our opinion, would have well warranted a very much larger decree; but the complainant has not appealed, and we cannot, therefore (and for this reason alone), do what the nature and circum-

stances of this case require.    Certainly there is no occasion for the defendant to complain upon this ground. •

In regard to the ninth and tenth grounds relied upon by defendant, they relate to premises assumed by the circuit judge, and data adopted by him, from which he made his computations in arriving at the amount stated in the decree. Upon this point it is only necessary for us to say that we cannot review such data and computations, when it is clear that the result clearly shows, as in this case, the amount of the decree no larger than it should have been.

Counsel for defendant claims the court erred in denying defendant's motion to suppress the deposition of Charles Chadwick, for the following reasons:    (1) Because the commissioner did not subscribe each sheet of said deposition, as is required by section 5, Chancery Rule No. 52 ; (2) because the commissioner did not inclose the commission, interrogatories and depositions in a packet, and bind it with tape, and set his seal at the several meetings or crossings of the tape, as is required by the sixth section of said rule.    These objections are both formal, and allege a failure to comply with a rule of court.    The object of this rule is clearly apparent. It is to guard against fraud and imposition in securing the deposition.    At most, the complaint is one of irregularity. It is not claimed that any fraud or imposition was practiced in taking the deposition, or in any of the preliminary proceedings preparatory to taking the same.    The witness was cross-examined upon interrogatories framed by counsel for the defendant, and it is difficult to see in what manner the defendant could have been prejudiced ; and it is a rule in equity, as well as at law, that error without prejudice to the party complaining is no ground for disturbing the decree.    The spirit and reason of the rule which, it is claimed, have been infringed in this case, are to be considered rather than the letter.    A strict observance is not required where there is no suspicion that the deposition has been tampered with, or other wrong indulged by commissioner or parties:    *Cook v. Bell*, 18 Mich. 392 ; *Van Sickle v. Gibson*, 40 Mich. 172; *Locke v. Tuttle*, 41 Mich. 408;

*Nelson v. Woodruff*, 1 Black. 156. Rule 54 provides that no deposition shall be suppressed for irregularity or informality in taking the same,. except on special motion before the hearing, which motion shall be made within ten days after the solicitor has received notice of its being received. It is claimed the notice mentioned in the rule was given, but an examination of the record shows, if the same strictness and technical nicety insisted upon by the counsel for the defendant were to be applied to his notice, he would not be able to show any notice given or motion to suppress made. There was no error committed in denying the defendant's motion to suppress.

We find nothing in the record of which the defendant has any reasonable ground for complaint, and the decree should be affirmed, with costs.

CAMPBELL, C. J., and MORSE, J., concurred. CHAMPLIN, J., did not sit.