WILLIAM HUETTEMAN, Curator of ALICE PIELSTICKER, Appellant, v. HENRY VIESSELMANN *et al.*, Respondents.

### St. Louis Court of Appeals, March 22, 1892.

1. **Trusts as to Personalty :** SUFFICIENCY OF ORAL EVIDENCE. To establish a trust as to personalty by oral evidence, the evidence must, as a general rule, be clear in regard to the subject-matter and purposes of the trust and the person or persons who are to take the beneficial interest. Nevertheless the attendant circumstances in a particular case may be such—and they are *held* to be so in this case—as to require but slight independent proof to authorize a court of equity to declare such a trust.

2. **Action in Equity :** NONSUIT. The practice of granting a nonsuit in an action in equity ought not to be encouraged. If the defendant elects not to offer any evidence, the correct practice is to take the case as submitted upon the plaintiff's evidence.

3. **Evidence :** DECLARATIONS OF PARTY IN THE COURSE OF NEGOTIATIONS FOR A COMPROMISE. *Held,* that evidence of declarations by the defendant in this cause was properly excluded, on the ground that it appeared that the declarations had been made during the pendency of negotiations between the parties for a compromise.

4. **Trusts:** FOLLOWING TRUST FUNDS. When a trustee uses trust funds in the purchase of realty, the beneficiary is entitled to a special lien on the realty to secure a decree for the repayment of the funds. But to warrant the charge, there must be proof of such use ; evidence that the trustee was in possession of the funds, and further that he purchased the realty, will not suffice.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*George Bullock* and *Wm. F. Woerner*, for appellant.

(1) Statements and admissions of facts made by a party to the record against his interest are always admissible in evidence against him. 1 Greenl. on Ev., sec. 171 ; *Wright v. Gillespie*, 43 Mo. App. 244, 252. The admissions excluded by the court were in no way connected with a compromise. "It is the condition, tacit or express, that no advantage shall be taken of the admission, it being made with a view to an amicable adjustment that operates to exclude it." 1 Greenl. on Ev., sec. 192 ; *Doon v. Ravey*, 49 Vt. 293, 296 ; *Wright v. Gillespie*, 43 Mo. App. 244, 251, 252. The correct rule of law is much stronger than is necessary to reverse the ruling of the trial judge. Independent admissions, even though made in the course of a pending adjustment, may be shown, when they are of facts, as facts, and not merely intended to be treated as facts for the purposes of the pending negotiations. *Wright v. Gillespie*, 43 Mo. App. 244 ; *Plummer v. Currier*, 52 N. H. 287, 296 ; *Doon v. Ravey*, 49 Vt. 293, 296 ; *Arthur v. James*, 28 Pa. St. 236 ; *Garner v. Myrick*, 30 Miss. 448 ; *Gerrish v. Sweetser*, 4 Pick. 374 ; *Snow v. Batchelder*, 8 Cush. 513, 516, 517 ; *Murray v. Coster*, 4 Cowen, 635 ; *Manistee v. Scymour*, 31 N. W. Rep. 140, 144 ; 1 Greenl. on Ev., sec. 192. (2) In an equity case such as this, appellate courts will examine the testimony for themselves, especially when it is undisputed, and in a proper case reverse the finding of the chancellor. Whether a trust relation exists is, after all, a question of fact, to be established by evidence satisfactory to the conscience of the chancellor. "The

intention of the party making it affords the only sure test of its creation." The undisputed admissions and statements of defendants, together with the facts and circumstances disclosed by the evidence, made out at least a *prima facie* case, and the court erred in nonsuiting plaintiff. *Porter v. Bank*, 19 Vt. 410, 419, *et seq.; Chadwick v. Chadwick*, 59 Mich. 87.

*Broadhead & Hezel*, for respondents.

(1) The subject-matter and purposes of a trust in personal property, and the persons who are to take the beneficial interests, must be clearly ascertained. The evidence does not show this. *Kramer v. McCaughey*, 11 Mo. App. 426 ; *Childs v. Wesleyan Cemetery*, 4 Mo. App. 74 (2) The testimony of plaintiff's attorneys as to statements made by defendants during a visit made by them, in which these attorneys declared that they came for the purpose of attempting to amicably settle this suit, was properly excluded. *Railroad v. Farrell*, 76 Mo. 183 ; *Ins. Co. v. Warehouse Co.*, 93 U. S. 527 ; *Barker v. Bushnell*, 75 Ill. 220.

BIGGS, J.—Alice Pielsticker is the illegitimate child of Minnie Pielsticker, deceased. The defendant, Mary Viesselmann, wife of Henry Viesselmann, was the stepmother of Minnie. At the time of the latter's death her life was insured in the order of "Chosen Friends" for $1,000, and her step-mother was named as the beneficiary in the certificate. The dues and assessments were paid by the deceased. Alice was nine years old when her mother died, and this action in equity was instituted by her curator, in which he claims, and on the trial attempted to prove, that Mary Viesselmann was named in the certificate with the understanding and agreement that she would hold the insurance money as trustee for Alice. It was also averred that Mrs. Viesselmann had collected the money, and in violation of the trust had turned it over to her husband, who had used it in the

purchase of certain real estate in the city of St. Louis, the title to which had been vested in him. The answer was a general denial. At the conclusion of the plaintiff's evidence the circuit court sustained a demurrer to the evidence, dismissed the bill, and entered judgment for costs against the plaintiff.

On this appeal the plaintiff insists that the conceded facts and circumstances, when supplemented by the oral evidence introduced by him, were sufficient to establish the trust. It is conceded by the defendants that a trust in respect of personal property need not be proven by a writing, but they argue that the oral evidence as to the subject-matter and purposes of such a trust, and the person or persons who are to take the beneficial interest, must be clear. This is undoubtedly the general rule ( *Kramer v. McCaughey*, 11 Mo. App. 426), but the attendant circumstances in a particular case may be such as to require but slight independent proof in order to authorize a court of equity to declare such a trust. *Porter v. Bank*, 19 Vt. 410; *Chadwick v. Chadwick*, 59 Mich. 87; *Custance v. Cunningham*, 13 Beav. 363; *George v. Howard*, 7 Price, 646; *Batstone v. Slater*, 19 Eq. Cas. 250; s. c., 10 Ch. App. 431; *Fowkes v. Pascoe*, 10 Ch. App. 343. These authorities decide that, in determining whether the transfer of personal property was intended as a gift or in trust, the circumstances surrounding the parties are very material. In *Porter v. Bank*, *supra*, and *Chadwick v. Chadwick*, *supra*, it is held that trusts in personalty may be implied, or may result from certain circumstances requiring their existence for purposes of equity.

Now let us look into the evidence and the attendant circumstances, with a view of determining whether they establish a *prima facie* case of trust. If so, then the court erred in sustaining the demurrer to the evidence, and the cause must be remanded and the defendants required to answer the plaintiff's case. We wish to say in this connection that, although the supreme court

Huetteman v. Viesselmann.

(*Leeper v. Bates*, 85 Mo. 224) has given a qualified approval of the practice of sustaining demurrers to plaintiff's evidence in an equity case, we think that it is a practice which ought not to be encouraged. A court of equity, as a court of conscience, is supposed to discourage all concealments. Full disclosure of all matters is desirable in such cases. Of course, the defendant has the right to elect to be judged by the case as made by his adversary, but the correct practice in such cases is to ask the defendant whether he desires to offer any evidence, and, if he declines to do so, take the case as submitted on the evidence.

The deceased was exceedingly poor, and made a scant living for herself and child by working in a match factory. She possessed no property of any description. She had not lived with her step-mother for fifteen years previous to her death, and the step-mother during that time had contributed nothing to the support of the deceased, or her child. The insurance was procured after the birth of the child, and the premiums and assessments were paid by the deceased out of her wages. The deceased and her step-mother were members of the same lodge of "Chosen Friends." These are the circumstances which surrounded the parties at the time the insurance was procured.

The plaintiff introduced Christina Bente as a witness. After testifying that the deceased was poor, and had to work in a match factory to support herself and child, the witness was interrogated as follows: "*Q.* What was the relation between mother and daughter, that is between Minnie and Alice, with reference to love and affection? *A.* That was her daughter.

"*Q.* Well I know, but I am asking whether she loved her? *A.* Oh, yes, of course she loved her; she would give the world for her."

We extract the following from the testimony of Mrs. Huetteman, the wife of the plaintiff and sister of

Mrs. Viesselmann:  "*Q.* Where did Minnie live during the latter years of her life? *A.* About fifteen years she lived with me.

"*Q.* Where was Ella or Alice born? *A.* With me.

"*Q.* That is in your own house? *A.* Yes, sir.

"*Q.* What were Minnie's circumstances? *A.* She had to work for a living, or otherwise she did not have anything.

"*Q.* How old is this little girl? *A.* Next month she is nine years old.

"*Q.* Where is the little girl living? *A.* With me.

"*Q.* Has the little girl always lived with you? *A.* Always with me, yes, sir.

"*Q.* Have you ever had any conversations with Mrs. Viesselmann about this insurance money? *A.* Yes.

"*Q.* Just state the circumstances. *A.* Well, she told me from the first, more than once, that she would not defraud this child out of one cent.

"*Q.* Is that all that conversation? *A.* And that she would buy some property, and in that property the money of the child would be secured.

"*Q.* Was any particular money referred to? *A.* That she was very sorry that the money had been given to her or transferred to her rather instead of to Alice, because she had many sleepless nights on that account.

"*Q.* When did this conversation or these conversations take place with reference to the death of Minnie? *A.* Pretty soon afterwards.

"*Q.* Have you had any trouble with your sister [Mrs. Viesselmann], had any hard words with her? *A.* Never, we are always good friends.

"*Q.* And are now? *A.* And are now. Once she told me she was willing she would leave the money all to my husband, but the secretary [of the lodge] said she should not, that maybe I would die, or my husband would die, and the money would get lost, that is what

she told once to me. * * * That is she said once, when she got the money, she would bring the money all to my husband, but the secretary [Mr. Bauer] said she should not do it, because I would die or my husband would die, and she would have trouble."

It seems to us that the circumstances surrounding the parties to this litigation, when coupled with the uncontradicted testimony of Mrs. Huetteman, makes a very strong case for the plaintiff. The only fact in support of defendant's theory is that the certificate named Mrs. Viesselmann as the beneficiary, which may be reasonably accounted for on the theory that the deceased sought to conceal from the world the fact that she had an illegitimate child. It may be conceded that the certificate itself makes a *prima facie* case against the idea of a trust, but every other fact or circumstance points to a different conclusion. That the deceased should take a portion of her daily wages to pay for a life-insurance policy for the benefit of her step-mother, with whom she had not lived for fifteen years, and who had failed, in so far as this record shows, to befriend her and her child during their days of trouble, is a proposition, which seems to us to be incredible. The testimony is that the deceased loved her child. A witness said: "*She would give the world for her.*" Then why would she provide for a stranger and leave her little daughter in poverty? That she did so, or intended to do so, is unreasonable, because it is unnatural. In the absence of evidence to the contrary, a court of equity ought to declare, from these circumstances alone, a trust in favor of the child. The supreme court of Vermont (*Porter v. Bank, supra*), in speaking of the mode or manner by which trusts in personalty could be established, said: "*Trusts, too, may be implied or may result from certain facts and circumstances requiring their existence for purposes of equity.*" But the plaintiff's case is greatly strengthened by the oral evidence. If the insurance was procured for the individual

benefit of Mrs. Viesselmann, then her talk about not defrauding the child out of the insurance money, that she intended to invest it in real estate for the benefit of Alice, that she had spent many sleepless nights by reason of the fact that the insurance money had been transferred to her instead of to Alice, and that she would have delivered the money to the plaintiff but for the advice of the secretary of the lodge, that in doing so she might get into trouble, is inexplicable. It can only be accounted for on the theory that she held the money in a fiduciary capacity.

The defendants rely on the case of *Kramer v. McCaughey, supra*. That case is essentially different in its facts from the one we have here. In the *first* place the court decided that the trust sought to be established was not one which John McCaughey was under obligation to make. *Secondly*. That the evidence left the beneficiaries doubtful, and in what proportions they were to take. Hence, the court concluded that the subject-matter of the trust, its purposes and the beneficiaries, were not clearly ascertained.

It follows from what has been said that the judgment of the circuit court must be reversed and the cause remanded for further hearing. In view of a retrial it is proper to refer to other questions presented by the record, and which may arise on another trial. The plaintiff offered, and the court excluded, evidence of declarations made by Mrs. Viesselmann, which were claimed to sustain the idea of a trust. The offer of proof did not show what the admissions were; therefore, we cannot say whether the plaintiff was prejudiced by the action of the court or not. But, aside from this, we think it sufficiently appeared that whatever Mrs. Viesselmann said was during the pendency of, or was produced by, negotiations or offers of compromise and, therefore, privileged. The plaintiff's counsel ought not to insist on the admission of this evidence.

There is another matter to which we ought to call attention. It is alleged in the petition that Mrs. Viesselmann gave the insurance money to her husband, and that he used it in making a purchase in his own name of certain real estate situated in the city of St. Louis. The petition prays for a lien on this property to secure the performance of the decree of the court in the premises. The only evidence bearing on these facts to be found in the record is, that, a short time after the receipt of the insurance money, the husband purchased a certain piece of real estate in the city. That the plaintiff is entitled to a special lien on the land so purchased to secure the enforcement of the decree in the case, cannot be questioned (*Harrison v. Smith*, 83 Mo. 210 ; *Stoller v. Coates*, 88 Mo. 514 ; *Monro v. Collins*, 95 Mo. 33 ; *National Bank v. Ins. Co.*, 104 U. S. 54), provided that he can show that the trust money was used in its purchase. But in *Phillips v. Overfield*, 100 Mo. 466, the court held that it was not sufficient to show the possession of the money and the purchase of the land by the trustee. The money must be traced into the land. Hence, the plaintiff's evidence was insufficient on that point.

The judgment of the circuit court will be reversed and the cause remanded. All the judges concurring, it is so ordered.