SAMUEL S. BRAINARD *et al.*, Appellants, *v.* JAMES A. REAVIS *et al.*, Respondents.

June 19, 1876.

One who takes negotiable paper before maturity, as security for an antecedent debt, holds it subject to the equities between the original parties.

APPEAL from St. Louis Circuit Court.
*Reversed, and final judgment rendered.*

*H. D. Wood*, for appellants, cited : Dewitt v. Perkins, 22 Wis. 475 ; Hunt v. Sandford, 6 Yerg. 387 ; Brown v. Tabor,

5 Wend. 566; Anderson *v.* Nichols, 28 N. Y. 600; Hamilton *v.* Marks, 52 Mo. 78; Gill *v.* Cubit, 3 B. & C. 466; Story on Bills, sec. 194; Whitbred *v.* Jourdan, 1 You. & Coll. 303–328; Goodman *v.* Simond, 19 Mo. 106.

*T. G. C. Davis*, for respondents.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding in equity to obtain the cancellation of certain promissory notes. The allegation is that these notes were fraudulently obtained from plaintiffs by defendant Reavis, and transferred to defendant Davis with notice of the fraud.

The answer of Davis denies the material allegations of the petition.

Reavis was not served, and the proceeding was dismissed as to him.

The cause was tried before the court, and a decree rendered in favor of defendant. A motion for a new trial having been overruled, the cause is brought here by appeal.

It appears from the evidence that, on February 28, 1873, Reavis sold to plaintiff Brainard, as trustee for plaintiff's wife, 100 feet on Washington avenue, St. Louis.

To secure the deferred payments, Reavis took four deeds of trust, each upon twenty-five feet of the trust sold; each deed securing one principal note for $500, at thirty months, and five interest notes of $25 each.

The sale was concluded at Brainard's house, at night, and Reavis assured Brainard that the property was unincumbered.

At the time of making this assurance Reavis knew it to be false, as the property was then incumbered by two deeds of trust made by Reavis, one upon each half of the hundred feet sold, securing notes for $3,000, and interest under these deeds of trust. The property was sold on July 7, 1873, and purchased by Brainard.

On June 13, 1873, Brainard first heard of the existence

of these prior incumbrances, and called upon Reavis for an explanation.

Reavis promised to return the notes, and, on July 12th, gave Brainard a written statement that he had not negotiated these notes or placed them beyond his control; that they were void for failure of consideration, and that he would return them to Brainard, canceled, in ten days from date. They were never returned to plaintiff, but were, at the date of the judgment in this case, held by defendant Davis.

Defendant Davis swears that, on June 13, 1873, Reavis owed him $500, being proceeds of a note belonging to Davis which Reavis had collected and converted to his own use, and that Reavis also owed him $250 for services, and that the notes of Brainard were at that date in the possession of parties to whom Reavis had pledged them as security for $30; that Davis advanced to Reavis $30 to redeem these notes, which were then delivered to him by Reavis to indemnify Davis for the amount thus due by Reavis to him. Plaintiff swears that he had a conversation with Reavis about July 10, 1873, in the presence of Davis, in which Reavis said that he had been holding the Brainard notes to get them all together; that they were in Davis' keeping at the time. Reavis referred to Davis to confirm this statement, which Davis did by an inclination of the head.

At this interview, in the presence of Davis, Reavis' father said that Davis was merely holding on to these notes for safe-keeping. Hale, the holder of the prior incumbrance, under which the property was sold, testifies that he had conversations with Reavis about this incumbrance, in the presence of Davis, during April and May, 1873; that he told Davis about the middle of June that he was going to foreclose, and Davis asked him to wait. One Lett swears that, in December, 1873, he asked Davis if he knew any-

thing of the transaction between Reavis and Brainard, and Davis replied that he knew too much about it.

Davis was a clerk in Reavis' office, drew the deed and deeds of trust between Reavis and Brainard, and took the acknowledgments as notary.

He swears he had no notice of the fraud, and took the Brainard notes in good faith. He says nothing in his testimony as to the conversations between Reavis and Brainard in his presence.

The evidence in this case tends very strongly to show that Davis had notice, when he took these notes, that they had been obtained by Reavis in bad faith. It seems impossible, at any rate, to escape the conclusion that he knew enough about the matter to put him on his guard. Except that he seems to have advanced $30 to obtain possession of these notes from the party to whom they were pledged for that amount, they were transferred to Davis merely as collateral security for an antecedent debt.

But one who takes negotiable paper before maturity, as security for an antecedent debt, is considered, in Missouri, to hold it subject to all equities existing between the original parties. *Goodman* v. *Simonds*, 19 Mo. 106; *Grant* v. *Kidwell*, 30 Mo. 455. The rule has been laid down differently in some other States, and in the Supreme Court of the United States, 20 How. 343; but, under the law applicable to the matter in Missouri, the defendant must be required to deliver up these notes on being reimbursed the amount he actually paid upon them.

The judgment in this cause is, therefore, set aside, and judgment here will be entered, in favor of plaintiff against defendant, that he deliver up to plaintiff to be canceled the notes described in the petition, on being repaid $30 advanced by him on the notes, with interest from June 13, 1873. All the judges concur.