MICHAEL TYRELL, Respondent, *v.* CAIRO AND ST. LOUIS RAILROAD COMPANY, Appellant.

#### June 3, 1879.

1. Where bonds and coupons payable in another State are so framed as to be negotiable by the general law-merchant, they will, in the absence of evidence to the contrary, be presumed to be negotiable by the law of such other State.

2. A creditor who, in consideration of the transfer of negotiable bonds to him, extends time for the payment of a debt, becomes a purchaser for value, and that the bonds were taken for a preëxisting debt does not deprive him of the rights of a purchaser for value before maturity without notice of the equities between the original parties to the bonds.

3. The defence of *ultra vires* will not avail against holders for value of negotiable bonds issued by the directors of a corporation, where the stockholders of the corporation failed to take any steps to repudiate the action of the directors, but allowed the bonds to be sold, and availed themselves of the benefits thereof.

4. Where no prejudice can result from the omission, that the law in regard to annexing exhibits to a deposition has not been complied with is not a sufficient ground for a reversal.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

T. Z. BLAKEMAN, for appellant: The deposition offered was improperly allowed to be read.—Wag. Stats. 537, sects. 27, 28. The directors, in attempting to issue the bonds, exceeded their authority, and the bonds were not binding

upon the corporation. — 1 Potter on Corp., sects. 85–92 ; Rev. Stats. Ill. 1877, pp. 765, 766 ; *Railway Co.* v. *Allerton*, 18 Wall. 233 ; *Rollins* v. *Clay*, 33 Me. 139 ; Ang. & Ames on Corp., sect. 299 ; *Eidman* v. *Bowman*, 58 Ill. 444 ; *Pitman* v. *Adams*, 44 Mo. 578. The title to the pledged property was in the pledgeor. — Story on Bail., sects. 93, 308, 310 ; 2 Kent's Comm. (12th ed.) 578, 582 ; *Wheeler* v. *Newbold*, 5 Duer, 35 ; *Morris Canal* v. *Lewis*, 12 N. J. 329. One who takes negotiable paper before maturity as security for an antecedent debt is considered to hold it subject to all the equities existing between the original parties. — *Goodman* v. *Simonds*, 19 Mo. 106 ; *Brainard* v. *Reavis*, 2 Mo. App. 490. Under the law of Missouri, the instruments sued on are not negotiable paper, and hence were open to all defences in the hands of respondent. — *International Bank* v. *German Bank*, 3 Mo. App. 362 ; *Bailey* v. *Smock*, 61 Mo. 219 ; *Lowenstein* v. *Knopf*, 2 Mo. App. 159.

DONOVAN & CONROY, for respondent : Where the charter of a corporation authorizes the issue of bonds in aid of the purposes of the company, or to pay its debts, a *bona fide* holder of bonds issued by the directors under such power is not bound to inquire into the regularity of the steps taken by the directors prior to such issue. — *Supervisors, etc.* v. *Cook*, 38 Ill. 50 ; *Moran* v. *Commissioner, etc.*, 2 Black, 722 ; Big. on Estop. 421, 423, and cases. Where the charter of a railroad company provides that a board of directors shall manage its affairs, and the charter further provides that the corporation may issue bonds to pay debts, the directors have the power for the purposes aforesaid to execute and issue such bonds without first submitting their action to a meeting of stockholders. — *Dana* v. *Bank*, 5 Watts & S. 245 ; *Bank* v. *Dandridge*, 12 Wheat. 113 ; *Burnell* v. *Bank*, 2 Metc. 163 ; *Union Turnpike Co.* v. *Jenkins*, 1 Caines, *391. And the validity of

stock so issued cannot be questioned in the hands of *bona fide* holders for value. — Big. on Estop. 423.

HAYDEN, J., delivered the opinion of the court.

This is an action brought upon seven coupons, one of which is as follows: "40: The Cairo and St. Louis Railroad Company will pay the bearer forty dollars on the first day of July, 1874, at its office or agency in the city of New York, being six months' interest due on that day on said company's eight per cent mortgage bonds.   F. Bross, Secretary." The defence was that the bonds, being certain second-mortgage bonds of the defendant, which was incorporated by act of the Legislature of Illinois, were issued by the directors without the consent or authority of the stockholders of the company. The purpose of the corporation was to construct and operate a railway from Cairo to St. Louis; and, in addition to the usual powers, it had such as were conferred upon any other railroad company incorporated by the laws of Illinois. Its charter provided that the affairs of the company should be managed by a board of seven directors, and that the company should have power from time to time to borrow money, issue and dispose of bonds, and mortgage their corporate property, real or personal, and their franchise, to secure money borrowed or other debts. The company made a contract with Payson & Co., as contractors, the members of this firm being the chief managers and stockholders of the company. In October, 1871, the board of directors issued first-mortgage bonds to the amount of $2,500,000, secured by mortgage on the road, and this issue never appears to have been questioned. The corporation was formed in 1866, and the first meeting of stockholders was in 1875. In September, 1873, the company being largely indebted to the contractors and others, in order to relieve the road from debts that threatened the further construction, issued second-mortgage

bonds to the amount of $856,000, the coupons of some of which are here in suit.   These were issued by the board of directors in due form, and secured by a second mortgage on the road ; but, doubt being thrown upon their legality, only a few of them were actually used.

It is contended that the plaintiff is not in the position of a *bona fide* holder for value of these coupons, and that the rules applicable to such holders, as against a corporation raising the defence of *ultra vires*, are not to be here applied in his favor.   See *Singer* v. *Railroad Co.*, 6 Mo. App. 427.   It is said, first, that the words " for value received " are not in the coupons, and that consequently they are not negotiable under the statute.   Wag. Stats. 216, sect. 15. It is not necessary here to decide whether the statute has reference to coupons of a railway mortgage-bond, which are payable to bearer, and understood to be, and treated as negotiable throughout the commercial world.   It is sufficient that here both bonds and coupons are payable in New York, and the question is as to the law of that State.   *Stix* v. *Matthews*, 63 Mo. 371.   No statute was introduced in evidence upon this point, and accordingly the *lex loci solutionis* must be presumed to be the general law-merchant, by which these coupons are negotiable.

The plaintiff was a subcontractor under Payson & Co., who, having received these bonds from the defendant, and being indebted to the plaintiff, gave him their note and several of these bonds, as collateral, as it is claimed.   It appears that the plaintiff's demand was put in the hands of a lawyer, who was pressing for payment; that Payson & Co., the contractors and persons chiefly interested in the road, were trying to get time and effect a settlement; and, though the facts were not clearly drawn out on this subject, that time was given and forbearance extended in consideration of the transfer of these bonds to the plaintiff.   The lawyer said his people were pressing, and he would have to commence suit, and thereupon the bonds were given ; and

it would appear the forbearance was then procured, as, though this occurred in January, 1874, suit was not brought until November, 1875, being the present suit on the coupons. On such facts as here present themselves there ought not to be any doubt as to the law. These bonds were payable to bearer, and the property in them passed to the plaintiff by delivery, subject to the ulterior rights of the deliverers, Payson & Co., who obtained the precise consideration they were seeking for, namely, forbearance. Suit would have been commenced, we are to presume, since it was threatened, if these bonds had not been delivered. It is not easy to see any distinction between a case of this kind and a case where the collateral bill of a third person, not overdue, is delivered to the creditor for a debt contracted at the time of such delivery. See *Logan* v. *Smith*, 62 Mo. 455. In both cases there is a present consideration. In both cases the parties change their position, and the creditor makes a bargain which it is to be presumed he would not make except for the new security which he receives as collateral. When, as here, there is a distinct consideration which is given for the collateral, other than that which is given for the preëxisting debt, it cannot be considered that the doctrine of *Goodman* v. *Simonds*, as laid down by the Supreme Court of this State, applies. It was said by the learned judge who delivered the opinion in that case (19 Mo. 116, 117) : "We do not say that a bill of exchange passed to a person in the payment of a preëxisting debt would be liable in his hands, without notice, to the equities or defences of the original parties ; but that the holder of a bill merely as collateral security for a preëxisting debt, having given no value for it, no consideration for it, holds it liable to such equities." The case of *Brainard* v. *Reavis*, 2 Mo. App. 490, was not intended to go beyond what is held in *Goodman* v. *Simonds*. There can no longer be any doubt how the courts of New York, where these bonds are payable, would decide the question here presented. *Gro-*

*cers' Bank* v. *Penfield*, 69 N. Y. 502. Compare *Stalker* v. *McDonald*, 6 Hill, 93; *Wardell* v. *Howell*, 9 Wend. 174; *Coddington* v. *Bay*, 20 Johns. 637. It can hardly be doubted, from the present tendency of the authorities, that the doctrine of *Swift* v. *Tyson*, 16 Pet. 1, will eventually become the rule of the commercial States.

The plaintiff, then, stands in the position of a *bona fide* · holder who has taken these coupons for value, in the usual course of business, before maturity, and without notice of any facts impeaching their validity as between prior parties, and is, of course, entitled to sue on the coupons. This being so, the case comes within the principle of *Singer* v. *Railroad Company*, *supra*. It is unnecessary to discuss the question as to the power of the directors under the laws of Illinois, none of which, except the charter, were in evidence. The jury have decided that the stockholders acquiesced in the action of the directors in issuing these bonds, the court below having so ruled as to present this question in the instruction of the defendant by which knowledge or consent on the part of the stockholders was required, or their subsequent ratification of the action of the directors. The rule by which stockholders are held in such cases is well settled. Upon the basis that they have any standing in court, it is only as the principals of their agents, the directors. As other principals are held liable for the acts, even for the frauds, of their agents, done in the course of the principal's business, it is not easy to see why stockholders who stand by, as did the stockholders here, refusing to hold a meeting, and availing themselves of the benefits of the directors' actions, should be allowed to repudiate the corresponding burden. Ample time was given to the stockholders here concerned, to meet and disown the action of the agents whom they had selected to carry on their business, and their ratification is not less effectual than if a meeting had been held and a formal vote

taken. Upon them was imposed the legal obligation to act, and they refused to do so.

We will not reverse the case because there was a failure to comply with the law in regard to annexing exhibits to a deposition. Such failure has nothing to do with the merits of the case, and the matter addressed itself to the trial court on the testimony adduced.

No error is pointed out, and the judgment will be affirmed. All the judges concur.