ST. LOUIS UNION SOCIETY, Respondent, v. ALBERT MITCHELL ET AL.; C. H. TYLER ET AL., Appellants.

St. Louis Court of Appeals, May 17, 1887.

1. PRINCIPAL AND SURETY—OFFICIAL BONDS—TENURE OF PRINCIPAL—CORPORATIONS.—Under articles of incorporation which provide that the treasurer shall be elected annually, and shall hold his office until his successor shall be elected and qualified, and which make the giving of a bond a necessary qualification, the liability of the sureties, on such a bond, continues until their principal's successor is duly elected and qualified.

2. —— CONVERSION—TRUST FUNDS.—Trust funds, converted to his own use by a trustee, may be followed by the beneficiary so long as he can identify them, whatever change their form may have undergone, unless they have passed into the hands of an innocent purchaser, for value.

3. —— AGENCY.—Trust funds of a third person, converted by the treasurer of a corporation to his own use, and, by him, placed in the treasury of the corporation, have not been passed to the corporation for value, in the usual course of business, and without notice, and may be recovered of the corporation in the same manner as from its treasurer.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Affirmed.*

PATTISON & CRANE, with whom is ALBERT BURGESS, for the appellants: There is no evidence that the one thousand dollars paid by Mitchell was stolen money. *McDermott v. Railroad*, 73 Mo. 516. If it were, its payment by Mitchell, and receipt by the plaintiff, discharged the bond *pro tanto*, notwithstanding the money was, afterward, refunded to the person who claims to have been robbed of it. *Miller v. Race*, 1 Burr. 452; s. c.,

with notes, 1 Smith's Leading Cas. [5 and 8 Am. Ed.] 808, 854; *Ringling v. Kohn*, 4 Mo. App. 59; *Tyrrel v. Railroad*, 7 Mo. App. 298; *Murray v. Lardner*, 2 Wall. 21; *Peacock v. Rhode*, 2 Doug. 633; *Grant v. Kidwell*, 30 Mo. 455; *Goodman v. Simonds*, 19 Mo. 116; *Hodges v. Black*, 8 Mo. App. 395; *Terry v. Hickman*, 1 Mo. App. 119; *Davis v. Carson*, 69 Mo. 610; *May v. Quimby*, 3 Bush, 96; *Eastman v. Plummer*, 32 N. H. 238. The damages assessed were excessive, even if the plaintiff was entitled to recover any amount; but no breach of the bond was shown to have been committed during the term of office for which the bond was given, and the sureties are not liable. *Savings Bank v. Hunt*, 72 Mo. 597; *Harris v. Babbit*, 4 Dill. 185; *The People v. Shannon*, 10 Brad. 355; Murfree on Off. Bonds, sects. 625, 641; *County of Wapello v. Bigham*, 10 Iowa, 39.

J. W. COLLINS, for the respondent: The beneficiary of the trust fund, being able to trace it into the hands of the defendant, who is not an innocent holder for value, without notice, may recover it. *Taylor v. Plumer*, 3 Maule & Selwyn, 574; *Clarke v. Shee*, Cowp. 197; *Miller v. Race*, 1 Smith's Leading Cas. [5 and 8 Am. Ed.] and notes. The appellants are liable for the breaches of the bond, committed by Mitchell on February 15, or 16, 1886, in turning over stolen money on the one thousand dollar order presented to him for payment, and, prior thereto, in not paying taxes, and in not turning over the one thousand dollars, for deposit in the bank, to the board of trustees, as directed by them. *Bank v. Hunt*, 72 Mo. 597; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *Dover v. Twombly*, 42 N. H. 69; *Welch v. Seymore*, 28 Conn. 392; *The City of Fon du Lac v. Moore*, 58 Wis. 170; *Hart et al. v. Guardians, etc., of Pittsburg*, 32 P. F. Smith [81½ Pa. St.] 466.

ROMBAUER, J., delivered the opinion of the court. The appellants are sureties upon the official bond of

the defendant, Mitchell, who was the treasurer of the plaintiff corporation, and are sued for breaches of the bond, in his failure to pay out the funds of the corporation as directed by its governing body, and in the conversion of such funds to his own use.

The petition alleges that Mitchell was elected treasurer of the corporation December 8, 1884, for a term of office, commencing on, or about, January 1, 1885, and continuing until his successor, in said office, should be elected and qualified by giving bond ; that he executed the bond sued on, in the penal sum of two thousand dollars, on February 11, 1885, conditioned as follows :

"If said Albert Mitchell shall duly perform all of his duties as said treasurer, and shall account for, and pay over, all sums of money which shall come into his hands as such treasurer, whenever the payment of the same shall be required by the said St. Louis Union Society, or its proper officers, and shall demean himself as a faithful officer of the said society, then this obligation shall be void, otherwise it shall remain in full force and effect."

The petition further states that, while the said Mitchell was thus acting as treasurer, under said appointment, there came into his hands, as such, the sum of $3,397.90, out of which he paid, upon the plaintiff's orders, the sum of $2,014.50, leaving in his hands the sum of $1,383.40, which he failed and refused to pay over, but converted to his own use.

The answer was a mere general denial.

The trial resulted in a judgment for the plaintiff for the penalty of the bond, with an award of damages for $1,383.40, as claimed in the petition.

The errors complained of are, substantially : (1) That there was not sufficient evidence of conversion of any part of the funds during the term for which the bond sued on was given. (2) That, even if the defendants could be held liable as sureties on this bond, up to the

date when Mitchell was removed from the office as treasurer of the corporation, yet it affirmatively appeared that, besides the amount which the petition admits he accounted for, he also accounted for the further sum of one thousand dollars, and, hence, the damages are excessive. (3) That the court gave erroneous instructions to the jury.

The plaintiff, as part of its case, gave in evidence the articles of incorporation of the society, which, among other things, provide: "Amendment first. The officers of this society shall be a president, vice-president, a secretary, an' assistant secretary, a treasurer, a board of trustees, composed of seven members, and a committee composed of six members, all of whom shall be elected annually, on the second Monday of December, by members of the society, at a regular meeting, and shall hold their offices until their successors are elected and qualified."

It thus appears that, while the bond sued on did not, by its express terms, limit the liability of the sureties to any definite time, the office of treasurer was an annual office by the articles, and the liability of the sureties on the bond was limited to one year, and until the successor of their principal was elected and qualified. Morse on Banks, 225; *Savings Bank v. Hunt*, 72 Mo. 597, 599. The same instrument which fixed the duration of the tenure of office, also, provided that, previous to entering upon its duties, the treasurer should execute a bond, with satisfactory sureties, and this was an essential part of his qualification.

This is a feature which distinguishes this case from *Savings Bank v. Hunt* (*supra*). There the tenure of office, though not limited by the terms of the bond, was limited by a public law, which, for all intents and purposes, formed part of the contract, and the requirement to give a bond was one of a by-law, which the court held the corporation might waive if it saw fit to do so. It

was, therefore, held that the corporation could not hold sureties liable who were on the bond of a cashier for one year, for defalcations which occurred a year or more after the expiration of the year, although the cashier had been appointed as his own successor, and never had given any new bond. In speaking of the obligations of the sureties, the court said : "Their obligation is for his discharge of the duties of cashier for one year, if, at the expiration of that time, a successor should be appointed, and for one year, and such additional time as should elapse thereafter before a successor was appointed. The same policy which, in case of public officers, continues the incumbent in office until a successor is appointed, keeps alive the bond for the same period. Hence, if there had been no election of a successor to Hunt, in this case, the liability of the sureties would be unquestionable, under our decisions."

These preliminary remarks are pertinent in view of the first point made by the appellants.

It appears that Mitchell was elected treasurer in December, 1884. He gave, under that election, the bond sued on February 11, 1885. He was reëlected treasurer in December, 1885, and never gave another bond. The exact date of his defalcation is not shown, but it is fairly inferable, from the testimony, that it was prior to February, 1886, in which month he was arrested for larceny of the one thousand dollars hereinabove mentioned, and his connection with the corporation ceased.

January 14, 1886, Mitchell made a report as treasurer, showing a balance in his hands of $1,383.40, although it does not otherwise appear whether the money was in his hands or not. He was ordered, at the time, to present his bond or to renew it, and the board recommended that one thousand dollars of the funds be deposited with the Boatmen's Bank, on interest for six months. On January 28, the board again met, the treasurer presented his bank book, and was ordered to

have it balanced, and to bring up a statement from the bank certifying what amount he had on hand. On February 4, the board again met, and the treasurer stated that he could not get his book balanced up to that time. No warrant on the treasurer for the one thousand dollars had been drawn up to that date, but, at a meeting of the board, February 11, a warrant for the one thousand dollars was ordered to be drawn to make the deposit above referred to, and, also, a warrant for an amount, sufficient to pay the taxes for the preceding year.

It was, also, in evidence that, though the officers are elected annually, in December, they are never installed into office until the third Monday of the succeeding January, and that some formalities of installation were gone through with other officers, in this instance, in January, 1886, but not with Mitchell, because the latter had failed to renew his bond, or to give a new bond as treasurer, and because, as it seems, the board had some suspicions as to the state of his accounts. It appeared, however, that he was permitted to receive moneys of the corporation as its treasurer, notwithstanding that he had failed to give bond, subsequent to the January meeting, at which the other officers of the corporation were installed.

The defendants claim that, this state of facts being shown, their liability as sureties of Mitchell was determined, at the date of the first regular meeting, in January, 1886, or, at least, within a reasonable time thereafter, and that they are not responsible on the bond for any misconduct of their principal, after that date. There is some warrant for this view in the decisions of other states. *City of Montgomery v. Hughes*, 65 Ala. 201; *People's Ass'n v. Wroth*, 43 N. J. Law, 70; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *County of Wapello v. Bigham*, 10 Ia. 39. But the rule in this and some other states has always been otherwise. *Long v. Seay*, 72 Mo. 648; *The State ex rel. v. Kurtzeborn*, 78 Mo. 98; *The*

*State ex rel. v. Berg*, 50 Ind. 496, 502; *Thompson v. The State*, 37 Miss. 518; *Placer County v. Dickerson*, 45 Cal. 12. And the case of *Savings Bank v. Hunt* (72 Mo. 597, 599), is no exception to the rule, because that case, as above shown, rested on peculiar facts.

Nor are we prepared to say that, under all the circumstances of this case, more than a reasonable time elapsed between the time that Mitchell was required to furnish a new bond, to-wit: January 14, 1886, and the time he finally vacated the office, which was in February of that year. His sureties are not sought to be held liable for any funds that came into his hands thereafter, because his report, made January 14, shows a balance of $1,383.40 in his hands, and there is no pretense that he accounted for any part of such balance, unless it be the one thousand dollars hereinafter mentioned. The first point made by the appellants must, therefore, be ruled against them.

The second and third points, which are closely connected, will be considered together, and present a question of greater nicety. It appears that, when Mitchell was pressed by the committee of the board to make a settlement, he brought, on or about February 16, a package of nice, crisp notes, containing one thousand dollars, and delivered it to the committee, who, immediately thereafter, as ordered by resolution, took the money to the Boatmen's Bank, made a deposit of it, and took a certificate for the amount, payable to the corporation.

The defendant, Mitchell, in February, 1886, was employed as porter of the Missouri Pacific Railway Company. On the fifteenth of February, the money clerk of that corporation delivered to him a package containing $2,469.82 in money, of which the sum of one thousand dollars was in new silver certificates. The envelope, in which this money was delivered by the money clerk to Mitchell, was produced upon the trial. There was no evidence tracing this money package or its contents, after it was delivered to Mitchell, except the declaration of

Mitchell, while lying in jail on a charge of the larceny of this money, that he had stolen it, and that the one thousand dollars paid by him to the trustees of the plaintiff was a part thereof. This declaration was made because the railroad company demanded the funds from the plaintiff, charging that they had been stolen from them. The trustees, upon the faith of this declaration of Mitchell, and without any other evidence than was furnished by such declaration, and surrounding circumstances, thereupon turned over the certificate of deposit for one thousand dollars, issued by the Boatmen's Bank to them, to the Missouri Pacific Railway Company.

The testimony on the subject, whether the one thousand dollars, paid by Mitchell to the trustees, was part and parcel of the money delivered by the money clerk to Mitchell, for transmission, by express, seems to rest, almost exclusively, upon the declarations of Mitchell, and is as follows :

The secretary of the plaintiff, upon his examination in chief, gave the following testimony :

"He (Mitchell) was asked for one thousand dollars, and he brought the money to us, and I took it down to the Boatmen's Bank ; and I think it was three days afterwards that Detective Furlong came after me, and I had to give the money up. He stole the money from the railroad company, or express company, I don't know which."

"To pay the one thousand dollar order ?"   "Yes, sir ; and I went to the jail to see him, and I said to him : 'Is the money that you gave me, the money that you took from the company?' and he said, 'Yes, and you have to give it back.'"

Question, by the defendants' counsel :   "Do you know when he took the money ?"   A.   "I don't know the exact date. He told me that he took it, though." (Counsel for the defendants objects to the introduction of any evidence arising from what Mitchell told this witness, as such evidence is incompetent, as far as affecting the defendants is concerned).   Sustained.

On cross-examination, this same witness stated, referring to this one thousand dollars: "Albert Mitchell said it was not our money. I asked him if that was the same money that he took out of the envelope of the express company, that he had given to me, and he said, 'Yes. You will have to give it up.'"

Q. "This was money stolen from the Missouri Pacific Railway Company?"

A. "Yes, sir; from the express company."

Q. "And you voluntarily gave this money up, didn't you?"

A. "Yes, sir."

Thus, it will appear that, although the evidence of Mitchell's statements was first excluded by the court, upon objection of the defendant sureties, the same evidence was, subsequently, elicited by counsel for the defendant sureties, and was before the jury, without objection.

We do not feel called upon, under this state of the evidence, to pass upon the question, whether the declarations made by Mitchell, at the time and under the circumstances, would have been admissible as against his sureties. It must be remembered that, although Mitchell was lying in jail at the time, there is no evidence in the record that he had ceased to be the treasurer of the plaintiff, or that the relation of principal and surety between himself and his co-defendants had been determined. However this may be, the evidence was subsequently elicited by the defendants, themselves, on cross-examination, and the court was not thereafter requested to exclude it from the consideration of the jury, either by motion or instruction, so that, in neither view, are the defendants in a position to complain of any error on the part of the court in its rulings upon the testimony.

Nor are we even prepared to say that all the facts offered in evidence, outside of these declarations of Mitchell, do not furnish *prima facie* inferential proof

that the one thousand dollars, paid by Mitchell to the trustees, was part of the money entrusted to him by the Pacific Railroad Company.   It must be remembered that this is a civil case, to be determined on probabilities arising from the evidence.   The clerk of the railroad company testifies that the money, entrusted to Mitchell, did not reach its destination.   The envelope, in which the money was sent, is produced in court and identified. It is shown that one thousand dollars of the package were new silver certificate notes ; that the package was entrusted to Mitchell, February 15 ; that, on February 16, having been pressed for some time for a settlement, he produces, and delivers to the trustees, a package of one thousand dollars in new crisp notes.   Mitchell, himself, is a defendant, and is not called, nor is any reason assigned why he is not called, or why his deposition was not offered.   The clerk of the railroad company is not even cross-examined by the defendants.   All these circumstances, taken together, certainly seem to furnish some inferential evidence, sufficient, at least, to shift the burden of proof, but the defendants offer no evidence, whatever.

Moreover, the following instruction, asked by the defendants, seems to concede that there was evidence before the jury warranting them to find that the money paid by Mitchell to the trustees, was stolen money, and the property of the Pacific Railroad Company :

"8.   Even though the jury may believe, from the evidence, that some part, or all, of the money, delivered by Mitchell to the officers of the plaintiff, was stolen money, yet, as between the plaintiff and the sureties, the delivery of such money to the plaintiff's officers, paid Mitchell's indebtedness to the plaintiff to that extent, and the sureties can not be held liable for the amount so paid."

This instruction the court refused, and gave, upon the plaintiff's request, the following instruction :

"4.   The court instructs the jury that if they be-

lieve, from the evidence, that the one thousand dollars paid over to the plaintiff, by the defendant, Mitchell, was money which said Mitchell had stolen, and that the plaintiff was called upon to pay it back to the person from whom it had been stolen, and that the plaintiff did pay it back to the person to whom it belonged, then the defendants are entitled to no credit for, or on account of, said one thousand dollars."

The question raised by this instruction is the most serious question in the case.

The defendants contend that, conceding that Mitchell stole the money, yet, if he paid it out in the usual course of business, to the plaintiff, it was a valid payment, and discharged the sureties *pro tanto ;* that the Pacific Railroad Company never could have recovered the money from the plaintiff if the plaintiff received it in good faith, and the defendant sureties can not be prejudiced by the fact that the money, or its representative, was voluntarily returned, by the plaintiff, to the said company.

This proposition is unquestionably correct, as between strangers. If Mitchell had been a stranger to the railroad company, and a stranger to the plaintiff, such would have been the result. *Miller v. Race,* 1 Burr. 452; *Peacock v. Rhodes,* 2 Doug. 633; *Ringling v. Kohn,* 4 Mo. App. 59; *Tyrell v. Railroad,* 7 Mo. App. 298. The unqualified statement of the proposition by the defendants, ignores the peculiar circumstances of a case like the present, where it is inapplicable, for the following reasons:

(1)  Mitchell was a bailee of the railroad company, and stood toward that company in a trust relation. The abuse of that trust by him could confer no rights on any person in privity with him. If the property, in its original state and form, was covered with a trust in favor of the principal, no change of that state and form could divest it of the trust. *Taylor v. Plumer,* 3 Maule & Selwyn, 574; *Clark v. Shee,* Cowp. 197. That excep-

tion is fully recognized in the notes to *Miller v. Race* (1 Smith's Lead. Cas. [6 Am. Ed.] 736). We do not mean to intimate that if the plaintiff had paid out these funds, in the ordinary course of business, the railroad company could have followed the individual bills into whosesoever hands they came, but we are clear that, while they remain intact in the plaintiff's possession, it could recover them, whether the package remained in its normal shape, or was represented by a certificate of deposit.

(2) Mitchell was not a debtor of the plaintiff, in the sense in which the delivery of trust funds by him to the plaintiff would constitute the payment of a debt, in the ordinary course of business. The funds in the plaintiff's treasury were not his property, but the property of the plaintiff. He could not make himself a debtor of the plaintiff by abstracting them. *Quo ad hoc*, he was a simple representative of the plaintiff. If he stole these funds and placed them in the plaintiff's treasury, the plaintiff could get no more title to them than if any other officer of the plaintiff had stolen funds and placed them in the plaintiff's treasury. A corporation, in the very nature of things, can act only by its agents, and it admits of no controversy that it is responsible for the acts of its agents, whether authorized or not, to the extent of the benefit it derives from them. We can not see how the mere fact that the funds were not placed by him directly in the plaintiff's treasury, but, after being stolen, were delivered to a committee, and placed by the committee in the plaintiff's treasury, can vary the matter.

It results, from the foregoing statements, that neither of the errors assigned by the appellant, is well assigned. With the concurrence of Judge Thompson, the judgment is affirmed. Judge Lewis is absent.