D. A. MAYER et al. Curators, Respondents, v. CITIZENS BANK OF STURGEON, Appellants.

**Kansas City Court of Appeals, December 3, 1900.**

1. **Banks and Banking**: TRUST FUND: DEPOSITOR'S DEBT: SCIENTER. A bank can not use a deposit to pay the individual debt of a depositor due to it where it has knowledge that the deposit is held in a fiduciary capacity; and the facts in this case show knowledge on the part of the bank.

2. ———: ———: COMMINGLING: EARMARK: CONVERSION. Where in a depositor's account his own and his trust funds are mingled and checked out so that the trust money can not be identified, tne beneficiary can not maintain conversion against the bank though a part of the commingled fund was applied to the depositor's debt to the bank.

3. **Trust and Trustee**: COMMINGLED TRUST FUNDS: EQUITY. Equity will follow a fund through any number of transmutations so long as it can be identified, and even though it becomes commingled with the moneys of the trustee and can not be distinguished therefrom, will take out the trust funds from the commingled mass; but it will stop its pursuit when the means of identification fails.

Appeal from the Boone Circuit Court.—*Hon. John A. Hockaday,* Judge.

REVERSED.

*S. Turner* and *E. W. Hinton* for appellant.

(1) The court erred in overruling the demurrer to the evidence on the third count, and in refusing defendant's declaration of law number 7, because there was no evidence tending

to show any notice on its part as to the trust character of the fund in controversy. Thornton v. Rankin, 19 Mo. 193; Powell v. Morrison, 35 Mo. 244; Fletcher v. Shaumburg, 41 Mo. 501; Eyerman v. Bank, 13 Mo. App. 289; affirmed in 84 Mo. 408; Clark v. Bank, 57 Mo. App. 277. (2) The evidence wholly fails to identify the money received by defendant on Palmer's check in payment of his note as any part of the funds of his wards, and hence the court erred in overruling the demurrer to the evidence and in refusing the defendant's sixth declaration of law. Phillips v. Overfield, 100 Mo. 466; Huetteman v. Viesselmann, 48 Mo. App. 582; Society v. Mitchell, 26 Mo. App. 206; Thompson's App., 22 Pa. St. 16; Bank v. Campbell, 77 Fed. Rep. 705; Neely v. Rood, 19 N. W. Rep. (Mich.), 920. (3) The claim of plaintiffs or their wards is equitable purely and must be enforced, if at all, in a court of equity. Brooks v. Mastin, 69 Mo. 58; Leaphart v. Bank, 33 L. R. A. 700.

*W. H. Waller, T. S. Carter* and *Fry & Clay* for respondents.

(1) A trustee or curator can not use trust funds or property in his hands for the payment of his individual debts. He can not use the same for his gain or profit. State ex rel. v. Branch, 134 Mo. 592; Galloway v. Gleason, 61 Mo. App. 21. (2) Wrongfully depriving a party of possession, where he is entitled to possession, is a conversion. McDonald v. Mangold, 61 Mo. App. 291, 292; 2 Chitty's Pld. 621. While we claim the act of placing the money to S. C. Palmer's individual account was a conversion for which defendant is liable, the receipt and use of the money in payment of Palmer's individual debt due defendant and its refusal to account to plaintiff for the same, clearly fixed defendant's liabilities. Clark v.

Bank, 57 Mo. App. 277, 285; Payne v. Bank, 43 Mo. App. 377, 382; Johnson v. Bank, 56 Mo. App. 257; Patterson v. Booth, 103 Mo. 402, 403; Lindsay v. Bank, 3 Mo. App. Rep. No. 2, p. 54.

SMITH, P. J.—This is an action for conversion by defendant bank of a sum of money deposited with it. The petition was in three counts. On the first and second the finding was for the defendant and on the third for plaintiffs. There was a trial by the court, without a jury, resulting in judgment for plaintiffs and defendant appeals.

The appealing defendant assails the judgment on the ground that the evidence is insufficient to support it. Turning to the record and we find that there is very little if any dispute as to the evidence. The facts which it tends to prove are that Palmer, curator, sold the interest of his ward in certain lands to one Batterton, taking from him his promissory notes for the purchase money. Just before the date when said notes would mature the curator placed them in the hands of T. S. Carter, an attorney, who collected the same receiving a check from Batterton payable to said Palmer or bearer for $1,265, the amount of said notes. This check Mr. Carter took to the defendant bank and there told Dr. Keith, its president, that he wished to deposit the check to the credit of S. C. Palmer, curator, when Dr. Keith remarked that he knew what the check was for and thereupon wrote a receipt for the amount to S. C. Palmer, curator, and delivered it to Mr. Carter.

It appears that the teller of the bank wrote the deposit slip so that it showed the amount of the Batterton check was deposited to the individual credit of S. C. Palmer. And it seems that from this slip it was carried that way into the books of the bank. Shortly after the deposit was made and entered upon the books of the bank to the individual credit of the

curator, the cashier, Stewart, told him, the curator, that he had never had but one account there and asked him if he still wanted it all kept together in one account and to which he replied: "Yes, put it (the check) on the account I always had there," and it was accordingly so entered on the curator's individual pass book as well. It further appears that at the time of the deposit of the Batterton check the curator had an account with the defendant bank and a considerable balance to his credit. A few days after this deposit was made the curator made another to his credit amounting to $2,373.48, and that between the date of the deposit of the Batterton check and January 13, 1899, the curator drew against the balance in his account quite a number of checks in favor of various persons amounting in the aggregate to about $3,000.

On January 12, 1899, the curator was removed by the probate court and the plaintiffs appointed as his successors. On the next day—January 13—the former curator drew his check against his account in favor of the defendant bank for $1,000, which amount was applied to the payment of his individual indebtedness to the bank. This check reduced the balance in the account to about forty dollars.

It is a well-settled rule of law that a bank can not use a deposit to pay the individual debt of the depositor due to it, where it has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him. Johnson v. Bank, 56 Mo. App. 257; Clarke v. Bank, 57 Mo. App. 277; Payne v. Bank, 43 Mo. App. 377. The recital in the receipt that the amount of the Batterton check had been deposited to the credit of S. C. Palmer, curator, when considered in connection with the declaration of the president at the time of the reception of the deposit that he knew what the Batteron check had been given for, together with the testimony of the cashier to the effect that he knew that Mr. Batterton and the curator were

on a "trade" in respect to the land of the latter's wards, is sufficient, we think, to justify the inference that the managing officers of the defendant bank knew that the Batterton check was given for the purchase price of the land of the curator's ward and that the amount it called for belonged to the estate of such ward.

Now if this amount had been deposited to the credit of the curator as such and its identity thus maintained as a separate and independent fund and the curator had sought to pay his own debt to the bank by an appropriation of the fund so to his credit in his fiduciary capacity, then the bank would have been affected with knowledge of the unlawful character of the appropriation. Johnson v. Bank, *supra*. But the difficulty here is that the money belonging to the estate of the wards was carried by the bank at the request of the curator into his general account with the defendant bank. It was not placed there as a special deposit and consequently its identity was lost. When the deposit passed into the curator's general account with the defendant bank it became so mingled and blended therewith as to become incapable of identification. It became merged with the other larger and smaller deposits in the general balance in the account. This account subsequently changed from day to day, a large amount was afterwards deposited and various other amounts were from time to time checked out. How can the money belonging to the ward's estate be identified? It can be traced into the curator's general account but there all traces of its identity are lost.

Now the very gist and pith of the third count of plaintiffs' petition is that the curator drew his individual check "upon said trust fund which defendant accepted, well knowing that the same was the property of said trust fund and not the property" of the said curator individually and "credited the same upon the individual debt" of the said curator, "well

knowing that by the acceptance of said check and withdrawing of the money from said bank and accepting the same for itself that it was converting to its own use money which did not belong to said curator and that it was the property of said trust fund," and that said trust fund was a part of the estate of said ward to which plaintiffs were entitled. If this fund was swallowed up in the curator's general balance—if his account had been changed from day to day until at the date of the $1,000 check there only remained a balance to the curator's credit slightly in excess of the amount of the check, it is certainly quite impossible to identify the money paid defendant out of the curator's general account as a part of the amount deposited to that account by Mr. Carter. How can it be said that the bank laid its hands on this particular fund for the payment of an individual debt of the curator to it, when the identity of the fund had long previously been lost?

This thousand dollars balance which the curator checked out to pay his note to the bank was no more a part of the deposit made by Mr. Carter than it was of the other deposits which entered into the curator's general balance with the bank. There was nothing by which it could be distinguished from other moneys with which it was mingled in the same general balance. There was no trust fund in the bank at the time of the acceptance of the thousand dollar check which could be distinguished from the other funds deposited by the curator to his individual account. So we think the evidence wholly fails to identify the money received by the defendant's check in payment of his note as any part of the funds of his wards as it should. Society v. Mitchell, 26 Mo. App. 206; Huetteman v. Viesselmann, 48 Mo. App. 582; Phillips v. Overfield, 100 Mo. 466; Neely v. Rood, 19 N. W. Rep. (Mich.), 920; Thompson's Appeal, 22 Pa. St. 16.

In cases of this kind it seems from the authorities to be a

fundamental condition of recovery that the subject of the conversion be susceptible of identification.    Palmer was the payee of the Batterton check, held the legal title to it and when he passed it to his credit the simple relation of debtor and creditor existed between him and the defendant bank which could be discharged by the payment of his checks against the balance in his account.    This being so, the claim of the plaintiffs or their wards is purely equitable and if capable of enforcement must be enforced, if at all, in a court of equity and not in a court of law.    Brooks v. Mastin, 69 Mo. 58.

If the curator collected the purchase money arising from the sale of the land of his wards and caused the same to be placed to his individual credit in the defendant bank, and thereby caused it to be mingled with the general balance to his credit so that its identity was lost, this no doubt constituted a conversion of the money by him for which his sureties on his curator's bond would be liable.    The doctrine of the adjudged cases in this state is that equity will follow a fund through any number of transmutations and preserve it for the owner so long as it can be *identified* and this doctrine has been extended to the extent that if a trustee or bailee wrongfully mixes trust money with his own so that it can not be distinguished as to what portion is trust money and what private funds, equity will follow the money by taking out of the assets of the trustee or bailee or his insolvent estate the amount due the beneficiary.    Bank v. Brightwell, 148 Mo. 358.

Harrison v. Smith, 83 Mo. 210, was where a bank had received a sum of money, not for deposit but as agent to deliver to a borrower, and wrongfully mingled it with its general cash. In an action against the bank's assignee, then insolvent, it was held that it was immaterial that this fund could not be traced to any particular asset coming into the hands of the assign, since, as a whole, the assets were swelled by an amount

which the bank had no right to retain. The decree was for the repayment as a preferred claim. And to the same effect was Stoller v. Coats, 88 Mo. 514; Synod v. Schoeneich, 143 Mo. 652; Pundman v. Schoenich, 144 Mo. 149.

Leonard v. Latimer, 67 Mo. App. 136, was where a cashier of a bank deposited funds held by him as a mere agent to his private account, which was overdrawn to an amount in excess of the deposit. It was held the bank being bound by the cashier's knowledge received the entire trust fund and by crediting it to the cashier's overdrawn account instantly appropriated it to its own use in payment of the debt. And that this rendered the bank a trustee. It was decreed that the claimant was entitled to prepayment out of the funds in the hands of the receiver. These and other cases which might be cited from our own reports very fairly and clearly establish the equitable rule that the right of pursuing a fund fails when the means of identification or ascertainment fail.

Accordingly, our conviction is that the defendant bank's instructions in the nature of a demurrer to the evidence should have been sustained, instead of overruled, and for this error the judgment will be reversed. All concur.